Appellant, Fred Dykes, was convicted of robbery in the first degree and sentenced to twenty years' imprisonment in the penitentiary.
Leon Alexander testified at trial that he was employed at Hardee's Number Two in Jefferson County, Alabama, on the day of the robbery. He was leaving the establishment around 2:00 a.m. when he was approached by two armed men wearing stocking masks. The men forced him at gunpoint to summon the managers of the store.
Eric Agee was the first manager to arrive, but he did not have the current combination to the Hardee's safe, and so the robbers held Alexander and Agee hostage until a second manager arrived with the combination.
Agee testified that he opened the safe and removed approximately $1200.00, which he gave to the two men. At one point, although Agee had not told the men his name, one of them said to him, "Eric, we're not out to hurt nobody." After the two men took the money and fled, Agee sounded an alarm in the cash register drawer.
Toward the conclusion of the ordeal, Agee recognized appellant as someone he had worked with for over a year at Hardee's. Agee testified that although it had been approximately a year since he worked with appellant, he observed the robbers under lighted conditions and that he could see through the stockings covering the men's facial features.
Appellant called no witnesses, nor did he take the stand to testify in his own behalf.
The sole issue presented for consideration on review is whether the trial court erred in denying appellant's motion to dismiss the indictment on the ground that he was denied a speedy trial.
The facts governing determination of this issue are as follows:
 1. December, 1980 — Appellant was indicted for the robbery of Eric Agee.
 2. December 12, 1980 — Appellant was arraigned and trial was set for March 30, 1981.
 3. March 30, 1981 — A continuance was granted due to the absence of two police officers who were necessary witnesses.
 4. June 3, 1981 — Appellant filed a motion for speedy trial.
 5. July 13, 1981 — Appellant was convicted of robbery in the first degree and sentenced to twenty years' imprisonment in a separate case. The venire was deemed to be tainted, and the case sub judice was passed to January 11, 1982, in accordance with the policies and procedures in the Tenth Judicial Circuit.
 6. August 13, 1981 — Appellant filed a motion to dismiss for failure to receive a speedy trial.
 7. September 4, 1981 — The trial court held an evidentiary hearing on appellant's motion to dismiss. At the conclusion of the hearing the court denied the motion.
 8. January 11, 1982 — Appellant came to trial, but a snow and ice storm necessitated the release of the jurors and a mistrial. *Page 1379 
 9. March 15, 1982 — The trial court overruled appellant's demurrer to indictment and motion to suppress.
 10. March 16, 1982 — The state's presentation of its case-in-chief began.
 11. March 17, 1982 — The jury returned a verdict of guilty of robbery in the first degree.
In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), the United States Supreme Court held that in determining whether an appellant's right to a speedy trial has been violated, a balancing test, weighing the conduct of the prosecution against that of the defendant, should be applied. The following four factors were set out to be considered when applying this balancing test: (1) length of delay, (2) defendant's assertion of his right, (3) reasons for delay, and (4) prejudice to the defendant. A discussion of the latter three factors is not required if the length of delay is not found to be "presumptively prejudicial" or "patently offensive." Barker, supra; Byrd v. State, 421 So.2d 1344
(Ala.Cr.App. 1982); Watson v. State, 389 So.2d 961 (Ala.Cr.App. 1980); Corn v. State, 387 So.2d 275 (Ala.Cr.App.), cert. denied, 387 So.2d 280 (Ala. 1980).
Because a person's right to a speedy trial attaches when an indictment is returned against him, Harper v. State,420 So.2d 835 (Ala.Cr.App. 1982) (and cases cited therein), in order to establish the period of delay in this case, we must start from December, 1980 when appellant was indicted and determine whether the delays which occurred were attributable to the defendant, the State or to causes of a neutral nature.
Trial was initially set for March 30, 1981, two months after the indictment. On that date the State announced that it was not ready because two police officers, considered to be necessary witnesses, were unavailable. The case was continued to July 13, 1981, resulting in a four-month delay.
We do not consider the length of this delay to be "presumptively prejudicial" or "patently offensive." In any case, it is not clear whether the delay was attributable to the State's negligence or whether it was justified by exigent circumstances. There is no allegation that it was a deliberate tactic used by the State to enhance its case or to prejudice the defendant.
The delay could have been justified, since even delays which are otherwise excessive may be "tolled" when an essential prosecution witness is unavailable. Wade v. State,381 So.2d 1057 (Ala.Cr.App.), cert. denied, 381 So.2d 1062 (Ala. 1980). If it was caused by the State's negligence, then this is to be weighed less heavily against the State than a purposeful delay.Barker, supra.
On July 13, 1981, appellant's trial was again reset for January 11, 1982, in order to avoid the effects of any prejudice against appellant on the venire resulting from his conviction of another offense. This delay inured to appellant's benefit and should not be weighed against the State.
On January 11, 1982, appellant came to trial, but a snow and ice storm intervened, necessitating release of the jurors and a resultant mistrial. Trial was reset for March 16, 1982. This final delay can of course be weighed against neither side.
Based upon the foregoing sequence of events we cannot find that the delay of some fifteen months between appellant's indictment and his trial was long enough to be "presumptively prejudicial", or "patently offensive."
We have, nevertheless, reviewed the record in light of the remaining Barker factors and we find no violation of appellant's right to a speedy trial.
Appellant's chief contention is that since his alibi witness disappeared before July 13, 1981, during the first continuance, he was denied a speedy trial. As in Corn, supra, we must note the lack of evidence to support this contention. There was no evidence, beyond the allegation of appellant, as reported by his attorney to the court, that the alleged witness ever existed, or of the facts to which she was *Page 1380 
expected to testify. Furthermore, it should be noted, as it was in United States v. MacDonald, 456 U.S. 1, at 8, 102 S.Ct. 1497
at 1502, 71 L.Ed.2d 696 (1982) that:
 "The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."
Although appellant clearly asserted his right to a speedy trial, we find no substantial prejudice to appellant caused by the three delays. In addition, we find that only the first of these delays could be attributed to the action or inaction of the State. Thus, the trial court's denial of appellant's motion to dismiss the indictment was proper.
We have carefully searched the record for errors prejudicial to the substantial rights of the appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in the result only.