809 So.2d 865 (2001)
Ex parte Andrew Anthony APICELLA.
(In re Andrew Anthony Apicella v. State of Alabama).
1992273.
Supreme Court of Alabama.
March 30, 2001.
Rehearing Denied July 6, 2001.
*868 Erskine R. Mathis, Birmingham, for petitioner.
Bill Pryor, atty. gen., and Thomas F. Parker IV, asst. atty. gen., for respondent.
Martha Morgan, Tuscaloosa, for amici curiae certain "Law Students" (Latisha Colvin, Melissa Hutchens, Neal Hutchens, Hallie Leavell, and Kacey Keeton), in support of the petitioner.
HOUSTON, Justice.
On the night of October 16, 1994, Anthony Apicella and a codefendant, who was later tried separately, robbed the Changing Times lounge in Birmingham. During the course of that robbery, five people were murdered. Apicella was convicted of capital murder, under § 13A-5-40(a)(10), Ala.Code 1975. The jury, by a vote of eight to four, recommended that Apicella be sentenced to life imprisonment without parole. After a delay of 14 months, the trial court overrode the jury's recommendation, as authorized by Ala.Code 1975, § 13A-5-47(e), and sentenced Apicella to death. The Court of Criminal Appeals affirmed the conviction and the sentence. Apicella v. State, 809 So.2d 841 (Ala.Crim. App.2000). See the opinions of the Court of Criminal Appeals for a more complete statement of the facts.
This Court granted certiorari review to consider three issues. The first two of these issues were raised by Apicella: Whether the 14-month delay between conviction and sentencing violated his right to a speedy trial and whether juror misconduct unlawfully influenced the jury's verdict. This Court raised the third issue ex mero motu: Whether the statutory provision allowing a trial judge to override a jury's recommendation in a capital case violates Art. I, § 11, of the Alabama Constitution of 1901 ("[T]he right of trial by jury shall remain inviolate.").

I. The Speedy-Trial Issue
Apicella claims he was prejudiced by the 14-month delay between his conviction and his sentencing. The Court of Criminal Appeals held that that delay did not deny him his right to a speedy trial; he argues that that holding conflicts with the holding of Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In Barker, the Supreme Court set out four factors a court should consider in deciding whether a defendant has been denied his right to a speedy trial: 1) the length of the delay; 2) the reason for the delay; 3) whether the defendant asserted his right to a speedy trial; and 4) the prejudice the delay caused the defendant. Barker, 407 U.S. at 530, 92 S.Ct. 2182.[1]
*869 The right to a speedy trial encompasses the right to a timely imposition of sentence. Hurst v. State, 516 So.2d 904 (Ala.Crim.App.1987). Therefore, the Barker factors can be properly applied to Apicella's claim that the delay in sentencing denied him his right to a speedy trial.[2]
In considering the length of the delay as a factor in the speedy-trial analysis, Barker states that "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." 407 U.S. at 530, 92 S.Ct. 2182.
Alabama courts have found no presumptive prejudice in a number of cases in which the delays were longer than the 14 months at issue here. Ex parte Payne, 683 So.2d 458 (Ala.1996) (25 months); Kelley v. State, 568 So.2d 405 (Ala.Crim.App. 1990) (15 months); Arnett v. State, 551 So.2d 1158 (Ala.Crim.App.1989) (20 months); Dykes v. State, 452 So.2d 1377 (Ala.Crim.App.1984) (15 months). Considering that Apicella complains here of a postconviction delay and that he could have been sentenced to no term less than life without parole, we conclude that the 14-month delay was not presumptively prejudicial.
Although we have concluded that the delay was not presumptively prejudicial, we nevertheless elect to consider the other three factors, because Apicella was sentenced to death. Under Alabama law, sentencing may not occur until after the trial court has ordered and received a presentence investigation report. Ala.Code 1975, § 13A-5-47(b). The trial court did not receive Apicella's presentence investigation report until July 31, 1997. Apicella was sentenced on August 11, 1997. Our examination of the record indicates that it was the lack of a presentence report that caused the court to delay sentencing.
Apicella argues that the actual reason for the delay was a desire on the part of the trial judge to give identical sentences to Apicella and his codefendant. The sentencing order does not indicate that in sentencing Apicella the trial court relied upon the result of the trial of Apicella's codefendant. It does, however, reflect an extensive reliance by the judge upon the information found in the presentence report.[3] The Court of Criminal Appeals did not err in finding no improper reasons for the delay.
During the 14 months between the date of the trial and the date the trial court sentenced Apicella, Apicella filed one motion asking that the sentence be imposed. The court denied that motion. A defendant need not assert his right to a speedy trial in order to preserve it, but the "frequency and force" of a defendant's efforts to obtain a speedy trial are factors a court should consider in determining whether a speedy trial was denied. Barker, 407 U.S. at 528-29, 92 S.Ct. 2182. Apicella's single effort does not, standing alone, indicate that he was denied his right to a speedy trial.
The fourth Barker factor is prejudice to the defendant. Apicella argues that he was prejudiced by being incarcerated in the county jail, which lacked the facilities of a state prison; by having his appeal delayed; by the possibility that, if on appeal he should win a new trial, witnesses' *870 memories may have faded; and by experiencing anxiety over the possibility that he would receive a sentence of death.
Barker addresses the matter of prejudice as follows:
"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."
407 U.S. at 532, 92 S.Ct. 2182.[4]
We find in the record no evidence indicating that the delay in sentencing impaired Apicella's chances of winning on a retrial. While Apicella may indeed have felt "anxiety and concern" during the delay between his conviction and his sentencing, it was anxiety and concern about whether he would be sentenced to life imprisonment without the possibility of parole, which the jury recommended, or to death. We conclude that that anxiety and concern are insufficient to support a holding that the delay in sentencing constituted a denial of his right to a speedy trial.
After weighing the four factors set out in Barker, we hold that the delay in sentencing did not operate to deny Apicella his right to a speedy trial.

II. The Juror-Misconduct Issue

We granted certiorari review in part to examine the misconduct of juror S.B. During the guilt phase of Apicella's trial, before the jury began deliberations, S.B. spoke with an attorney, T.R., with whom S.B. was acquainted.[5] The subject of their conversation was the law of complicity, an issue material to Apicella's trial.[6]
S.B. testified that his conversation with T.R. lasted approximately 2½ minutes, that T.R. was distracted during the conversation, and that they discussed the law of complicity only in the most general of terms. S.B. further testified that T.R.'s comments did not enter into his thoughts during deliberations and that the trial court's instructions on the law of complicity were "crystal clear." There is no question that S.B.'s actions constituted misconduct. At issue is whether this misconduct warrants a new trial.
Generally, under Alabama law, juror misconduct involving the introduction of extraneous materials warrants a new trial when one of two requirements is met: 1) the jury verdict is shown to have been actually prejudiced by the extraneous material; or 2) the extraneous material is of such a nature as to constitute prejudice as a matter of law. Knight v. State, 710 So.2d 511, 517 (Ala.Crim.App.1997). We conclude that neither of those requirements has been met in this case.
Apicella argues that when a court is determining whether a juror's conduct has caused actual prejudice the standard applied is whether the extraneous material "might have influenced that juror and others with whom he deliberated," Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932). Apicella relies heavily upon this statement in Roan:

*871 "The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered."
225 Ala. at 435, 143 So. at 460.
On its face, this standard would require nothing more than that the defendant establish that juror misconduct occurred. As Apicella argues, the word "might" encompasses the entire realm of possibility and the court cannot rule out all possible scenarios in which the jury's verdict might have been affected.
However, as other Alabama cases establish, more is required of the defendant. In Reed v. State, 547 So.2d 596, 598 (Ala. 1989), this Court addressed a similar case of juror misconduct:
"We begin by noting that no single fact or circumstance will determine whether the verdict rendered in a given case might have been unlawfully influenced by a juror's [misconduct]. Rather, it is a case's own peculiar set of circumstances that will decide the issue. In this case, it is undisputed that the juror told none of the other members of the jury of her experiment until after the verdict had been reached. While the question of whether she might have been unlawfully influenced by the experiment still remains, the juror testified at the post-trial hearing on the defendant's motion for a new trial that her vote had not been affected by the [misconduct]."
It is clear, then, that the question whether the jury's decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case. In this case, as in Reed, the effect of the misconduct was confined to the juror who committed the misconduct. The Reed Court stated:
"We cannot agree with the defendant that the verdict rendered might have been unlawfully influenced, where the results of the [misconduct] were known only to the one juror who [committed the misconduct] and that juror remained unaffected by the [misconduct]."
547 So.2d at 598. Because no evidence indicates that S.B. shared the content of his conversation with the other members of the jury and because no evidence indicates that S.B.'s own vote was affected, we cannot say the trial court abused its discretion in finding no actual prejudice.
Apicella also argues that we should hold the extraneous material introduced through S.B.'s conversation with T.R. to be prejudicial as a matter of law. Apicella supports this argument with the following language from Knight, 710 So.2d at 517:
"`Juror misconduct will justify a new trial ... when from the extraneous facts prejudice may be presumed as a matter of law.' Whitten v. Allstate Ins. Co., 447 So.2d 655, 658 (Ala.1984).... However, in some cases, `the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their verdict is necessary.' Id. (prejudice presumed as a matter of law from jury's consulting encyclopedia and dictionary definitions ...)."
(Quoting Minshew v. State, 594 So.2d 703, 716 (Ala.Crim.App.1991)).
On the other hand, we have also held that "mere exposure to [a] definition does not require a new trial as a matter of law." Pearson v. Fomby, 688 So.2d 239, 245 (Ala.1997). Our holding in Pearson serves to emphasize the limitations of the doctrine of "prejudice as a matter of law."
*872 Generally, a presumption of prejudice applies only in a case in which the jury's consideration of the extraneous material was "`crucial in resolving a key material issue in the case.'" Dawson v. State, 710 So.2d 472, 475 (Ala.1997) (citing Hallmark v. Allison, 451 So.2d 270, 271 (Ala.1984), and Ex parte Thomas, 666 So.2d 855 (Ala.1995)).
We are not willing to presume prejudice as a matter of law in this case. No evidence indicates that extraneous information arising from S.B.'s conversation influenced S.B.'s vote or that the information was ever considered by any other member of the jury. This case is distinguishable from cases such as Nichols v. Seaboard Coastline Railway, 341 So.2d 671 (Ala. 1976) (prejudice found as a matter of law where juror brought definitions into the jury room during deliberations and copied them onto a chalkboard). We conclude that the particular circumstances of this case provide no basis for finding prejudice as a matter of law.

III. The Jury-Override Issue

Section 13A-5-47, Ala.Code 1975, a part of the death-penalty statute, provides:
"(a) After the sentence hearing has been conducted, and after the jury has returned an advisory verdict, ... the trial court shall proceed to determine the sentence.
". . . .
"(e) ... While the jury's recommendation concerning sentence shall be given consideration, it is not binding upon the court."
The jury by a vote of eight to four recommended that Apicella be sentenced to life imprisonment without parole. Section 13A-5-46(f), provides:
"The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least 10 jurors."
The trial court sentenced Apicella to death.[7]
Section 11 of the Constitution of Alabama of 1901 ("the right to trial by jury") assures a person a right in certain situations (those in which that right existed at the time of the adoption of Alabama's first constitution and those in which that right existed by way of statute at the time of the adoption of the Constitution of Alabama of 1901, Gilbreath v. Wallace, 292 Ala. 267, 270, 292 So.2d 651, 653 (1974)), to have a 12-person, impartial jury unanimously decide the facts. Clark v. Container Corp. of America, Inc., 589 So.2d 184 (Ala.1991); Gilbreath v. Wallace, supra; Kirk v. State, 247 Ala. 43, 22 So.2d 431 (1945); Baader v. State, 201 Ala. 76, 77 So. 370 (1917); Tims v. State, 26 Ala. 165 (1855); Judge Walter B. Jones, Trial by Jury in Alabama, 8 Ala. L.Rev. 274, 277 (1956); 16 Ruling Case Law 181 (1917).
*873 The law of Alabama, as it existed when the Constitution of 1901 was ratified, expressly conferred upon the jury the power to impose the sentence of death or the sentence of life imprisonment for a defendant found guilty of murder in the first degree (Ala.Code 1897, § 4858); to impose a term of imprisonment for a defendant found guilty of murder in the second degree (§ 4858), manslaughter (§ 4862), rape (§ 5444), robbery (§ 5479), or certain other offenses (§§ 5050, 4420, 4758); and to fix and determine the amount of the fine that a convicted felon had to pay (§ 5415). Section 1205 of Act No. 607, Ala. Acts 1977 (codified at Ala.Code 1975, § 13A-5-2), removed from the jury the right to sentence and to fix and determine the amount of fines.[8] Did Section 1205 of Act No. 607 violate § 11 of the Constitution of Alabama?
If the statutory right of the jury to determine punishment was frozen into the constitutional "right to a trial by jury," then §§ 13A-5-1(a) and 13A-5-47 (making the trial court, not the jury, the sentencing authority) would violate the Alabama Constitution, and if it does violate the Constitution then the judicial override in this case would be unconstitutionalbut not only that: every death sentence imposed by an Alabama court for an offense that occurred after 12:01 a.m. on July 1, 1981 (the effective date of the 1981 death-penalty act; see Ala. Acts 1981, No. 81-178, § 24), would be unconstitutional and every sentence to life imprisonment without parole imposed for a capital offense and every felony sentence imposed under Article 1 of Title 13A, Chapter 5, would violate the Alabama Constitution.
Therefore, the question resolves into the issue whether the punishment a defendant is to receive is a question of fact that must be determined by a unanimous jury? This Court has indicated that the constitutional right to trial by jury does not encompass assessing punishment in capital cases, Ex parte Jackson, 672 So.2d 810 (Ala.1995) (Houston, J., concurring in the result); Ex parte Giles, 632 So.2d 577 (Ala.1993).[9] However, this Court has held that in civil cases the constitutional right to trial by jury does encompass the assessment of punishment. Smith v. Schulte, 671 So.2d 1334 (Ala.1995); Henderson v. Alabama Power Co., 627 So.2d 878 (Ala. 1993).
In Henderson and Schulte, this Court held that the right of a jury to punish in civil cases was protected by § 11, so that the Legislature not only could not remove from the jury the right to punish, but could not even control the extent of the punishment. Henderson and Schulte have *874 created confusion as to what the constitutionally protected right to trial by jury encompassed. Henderson, 627 So.2d at 898 (Maddox, J., dissenting), and at 904 (Houston, J., dissenting); Ex parte Giles, 632 So.2d at 586 (Maddox, J., concurring specially) and at 587 (Houston, J., concurring in the result); Smith v. Schulte, 671 So.2d at 1348 (Houston, J., dissenting), at 1355 (Hooper, C.J., dissenting from the order overruling the application for rehearing), at 1361 (Maddox, J., dissenting from the order overruling the application for rehearing), and at 1366 (Houston, J., dissenting from the order overruling the application for rehearing); Ex parte Jackson, 672 So.2d at 811 (Houston, J., concurring in the result).
To the extent they held that § 11 restricted the Legislature from removing from the jury the unbridled right to punish, Henderson and Schulte were wrongly decided.
We hold that the determination of punishment is not a question of fact and that § 11 of the Constitution of Alabama of 1901 does not require that a jury determine the punishment of a criminal defendant. Subsections (a) and (e) of § 13A-5-47, Ala.Code 1975, do not violate § 11 of the Constitution of Alabama of 1901.

IV. Conclusion

The judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
MOORE, C.J., and SEE and STUART, JJ., concur.
LYONS, HARWOOD, and WOODALL, JJ., concur in part and concur in the result in part.
BROWN and JOHNSTONE, JJ., concur in the result.
LYONS, Justice (concurring in part and concurring in the result in part).
I concur in Part I, dealing with the speedy-trial issue, and in Part II, dealing wit the juror-misconduct issue. As to Part III, dealing with the jury-override issue, I concur in the result.
I endorse the analysis in Crowe v. State, 485 So.2d 351 (Ala.Crim.App.1984), rev'd on other grounds, 485 So.2d 373 (Ala.1985), cert. denied, 477 U.S. 909, 106 S.Ct. 3284, 91 L.Ed.2d 573 (1986) (the § 11 preservation of the right to trial by jury is a preservation of that right as it existed at the time of the enactment of Alabama's first constitution). Because the jury had no role in sentencing until 1841, after the ratification of our first constitution in 1819, our jury-override statute does not violate § 11, Ala. Const.1901. Moreover, if we followed Smith v. Schulte, 671 So.2d 1334 (Ala.1995), cert. denied, 517 U.S. 1220, 116 S.Ct. 1849, 134 L.Ed.2d 950 (1996), and Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993), and gave primacy to the jury in matters dealing with punishment, then we would perhaps be reverting to a system that would violate the United States Constitution. See Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
WOODALL, Justice (concurring in part and concurring in the result in part).
I concur in those portions of the main opinion dealing with the delay in sentencing and the juror misconduct. However, with regard to that portion of the opinion which holds that a trial judge's statutory right to override a jury's recommendation is constitutional under Article I, § 11, of the Ala. Const. of 1901, I concur in the result. As the main opinion states: "This Court has indicated that the constitutional *875 right to trial by jury does not encompass assessing punishment in capital cases, Ex parte Jackson, 672 So.2d 810 (Ala.1995) (Houston, J., concurring in the result); Ex parte Giles, 632 So.2d 577 (Ala.1993)." 809 So.2d at 873. Today's opinion is consistent with those precedents and, therefore, any discussion of Smith v. Schulte, 671 So.2d 1334 (Ala.1995) and Henderson v. Alabama Power Co., 627 So.2d 878 (Ala.1993), is unnecessary.
HARWOOD, J., concurs.
NOTES
[1] The Court of Criminal Appeals considered the four Barker factors in affirming Apicella's conviction.
[2] However, the speedy-trial right guaranteed by the Sixth Amendment to the United States Constitution is primarily intended to prevent pretrial prejudice. United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).
[3] The trial court's sentencing order referred to the section of the presentence report describing Apicella's criminal history and to the section containing statements by Apicella's family.
[4] Of course, we consider these interests in light of the fact that Apicella stands convicted rather than accused. United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).
[5] At the time of his conversation with S.B., T.R. did not know that S.B. was sitting on a jury.
[6] S.B. also attempted to question his mother, a law school graduate, about the law of complicity. His attempt was rebuffed.
[7] An amicus brief filed in this case indicates that, as of July 21, 2000, 30% of all persons sentenced to death in Alabama since 1976, when our 1975 death-penalty statute became effective, had been sentenced by a judge who was overriding a jury's recommendation of life without parole (specifically, that during that time Alabama trial judges have overridden jury recommendations 67 times).

See "Brief for Amici Curiae University of Alabama Law Students Latisha Colvin, Melissa Hutchens, Neal Hutchens, Hallie Leavell, and Kacey Keeton; Martha Morgan, counsel," quoting Alabama Prison Project, "Fact Sheet" (updated as of July 21, 2000).
[8] Ala.Code 1975, § 13A-5-2, provides, in pertinent part:

"(a) Every person convicted of a felony shall be sentenced by the court ....
"(b) In addition to imprisonment, every person convicted of a felony may be sentenced by the court to pay a fine...."
(Emphasis added.)
[9] This is consistent with American law generally. "[T]he constitutional right of trial by jury does not encompass the right to have the jury assess the punishment." 21A Am.Jur.2d 340 Criminal Law § 1077 (1998); State v. Reynolds, 608 S.W.2d 422 (Mo.1980); Ex parte Moser, 602 S.W.2d 530 (Tex.Crim.App. 1980); Woods v. State, 130 Tenn. 100, 169 S.W. 558 (1914); George v. People, 167 Ill. 417, 47 N.E. 741 (1897).

Article IV, § 104, of the Alabama Constitution specifically delegates to the Legislature, acting by general laws, the power to fix the punishment for crime (subsection 14) and to remit fines, penalties, or forfeitures (subsection 28). This is in addition to the general delegation of legislative powers found in § 44 of the Constitution ("The legislative power of this state shall be vested in a legislature...."), which has been interpreted as conferring on the Legislature plenary power to legislate, except as restricted by either the Federal or the State Constitution. Ex parte Foshee, 246 Ala. 604, 606, 21 So.2d 827 (1945).