KELLUM, Judge.
The appellant, W.G.M., was convicted of rape in ‘the first degree, a violation of § 13A-6-61, Ala.Code 1975, sodomy in the first degree, a violation of § 13A-6-63, Ala.Code 1975, and sexual abuse of a child less than 12 years of age, a violation of § 13A-6-69.1, Ala.Code 1975. The circuit court sentenced W.G.M. to life imprisonment for his rape and sodomy convictions and to 20 years’ imprisonment for his sexual-abuse conviction. The circuit court ordered the sentences to run consecutively. The court further ordered W.G.M. to pay a fine of $3,000, $750 to the crime victims compensation fund, and court costs. W.G.M. subsequently filed a motion for new trial that the circuit court denied. This appeal followed.
W.G.M. does not challenge the sufficiency of the evidence on appeal; therefore, a detailed recitation of the facts is unnecessary in this case. On appeal, W.G.M. contends that the circuit court abused its discretion by denying his motion for a new trial in which he argued, among other things, that there existed juror misconduct where several jurors failed to correctly answer questions during voir dire and that the circuit court erred by not allowing the jury to have access to certain tangible evidence before announcing their verdict.
“The granting or denying of a motion for new trial rests largely within the discretion of the trial court, and the exercise of that discretion carries with it a presumption of correctness that will not be disturbed on appeal unless some legal right was abused and the record plainly and palpably shows that the trial court was in error.”
Knight v. State, 710 So.2d 511, 513 (Ala.Crim.App.1997) (quoting Beard v. State, 661 So.2d 789, 796 (Ala.Crim.App.1995)) (citations omitted).
I.
W.G.M. contends that juror misconduct occurred when jurors failed to completely disclose during voir dire their relationship with a State’s witness, the prosecutor, and the District Attorney. Specifically, W.G.M. alleges that Juror W.P. failed to mention during voir dire that she was married to the first cousin of a witness for the State, that she attended the witness’s wedding, or that they shared a relationship on *494 the Facebook social-media Web site. W.G.M. further contends that several jurors did not fully disclose that they had a “Facebook/Social Networking relationship” with the prosecutor or the District Attorney. (W.G.M.’s brief, p. 19.)
The Alabama Supreme Court has explained:
“ ‘The proper standard for determining whether juror misconduct warrants a new trial, as set out by this Court’s precedent, is whether the misconduct might have prejudiced, not whether it actually did prejudice, the defendant. See Ex parte Stewart, 659 So.2d 122 (Ala.1993).... The “might-have-been-prejudiced” standard, of course, casts a “lighter” burden on the defendant than the actual-prejudice standard. See Tomlin v. State, supra, 695 So.2d [157] at 170 [ (Ala.Crim.App.1996) ] ....
“ ‘It is true that the parties in a case are entitled to true and honest answers to their questions on voir dire, so that they may exercise their peremptory strikes wisely.... However, not every failure to respond properly to questions propounded during voir dire “automatically entitles [the defendant] to a new trial or reversal of the cause on appeal.” Freeman v. Hall, 286 Ala. 161, 166, 238 So.2d 330, 335 (1970)_As stated pre-
viously, the proper standard to apply in determining whether a party is entitled to a new trial in this circumstance is “whether the defendant might have been prejudiced by a veniremember’s failure to make a proper response.” Ex parte Stewart, 659 So.2d at 124. Further, the determination of whether a party might have been prejudiced, i.e., whether there was probable prejudice, is a matter within the trial court’s discretion.
“ ‘ “The determination of whether the complaining party was prejudiced by a juror’s failure to answer voir dire questions is a matter within the discretion of the trial court and will not be reversed unless the court has abused its discretion. Some of the factors that this Court has approved for using to determine whether there was probable prejudice include: ‘temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.’ ”
“ ‘Union Mortgage Co. v. Barlow, 595 So.2d [1335] at 1342-43 [ (Ala.1994)]....
“ ‘The form of prejudice that would entitle a party to relief for a juror’s nondisclosure or falsification in voir dire would be its effect, if any, to cause the party to forgo challenging the juror for cause or exercising a peremptory challenge to strike the juror. Ex parte Ledbetter, 404 So.2d 731 (Ala.1981).... If the party establishes that the juror’s disclosure of the truth would have caused the party either to (successfully) challenge the juror for cause or to exercise a peremptory challenge to strike the juror, then the party has made a prima facie showing of prejudice. Id. Such prejudice can be established by the obvious tendency of the true facts to bias the juror, as in Ledbetter, supra, or by direct testimony of trial counsel that the true facts would have prompted a challenge against the juror, as in State v. Freeman, 605 So.2d 1258 (Ala.Crim.App.1992).’ ”
Ex parte Dixon, 55 So.3d 1257, 1260-61 (Ala.2010) (quoting Ex parte Dobyne, 805 So.2d 763, 771 (Ala.2001)) (footnote omitted in original; emphasis in original). We have explained:
*495 “The might-have-been-prejudiced standard, although on its face a light standard, actually requires more than simply showing that juror misconduct occurred. ‘[T]he question whether the jury’s decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case.’ Ex parte Apicella, 809 So.2d 865, 871 (Ala.2001). Thus, 4[i]n applying this standard we look at “the temporal remoteness of the matter inquired about, the ambiguity of the question propounded, the prospective juror’s inadvertence or willfulness in falsifying or in failing to answer, the failure of the juror to recollect, and the materiality of the matter inquired about.” ’ Hooks [v. State], 21 So.3d [772,] 781 (Ala.Crim.App.2008) (quoting DeBruce v. State, 890 So.2d 1068, 1078 (Ala.Crim.App.2003), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005)).”
Bryant v. State, [Ms. CR-08-0405, February 4, 2011] — So.3d -, - (Ala.Crim.App.2010). With those principles in mind, we address W.G.M.’s claims of juror misconduct.
A.
W.G.M. argues that Juror W.P. “failed to mention that she was in fact married to the [State’s] witness’ first cousin and failed to mention that the witness had attended her wedding.” (W.G.M.’s brief, p. 17.) The record demonstrates that the venire was asked whether anyone knew the State’s witness, and Juror W.P. responded that the witness was “a cousin now through marriage.” (R. 48.) No follow-up questions were asked regarding the nature of Juror W.P.’s relationship with the State’s witness or whether that relationship included Facebook or any other social-media network. Because Juror W.P. was not asked whether she had a social-networking relationship with the State’s witness, there is no evidence that she willfully provided false information during voir dire. W.G.M. is, therefore, due no relief on this claim.
B.
W.G.M. also asserts that he might have been prejudiced because Juror W.P. failed to disclose that she and a State’s witness “shared a relationship on Face-book.” (W.G.M.’s brief, p. 17.) He also argues that he might have been prejudiced because several jurors did not disclose their “Facebook/Social Networking relationships” with the assistant district attorney and the District Attorney. (W.G.M.’s brief, p. 19.) As noted in Part I.A, Juror W.P. was not asked any follow-up questions regarding her relationship with the State’s witness. The record also demonstrates that members of the venire were never asked whether they had a social-media networking relationship with anyone associated with the District Attorney’s office. Because there is no evidence that the jurors willfully failed to disclose their social-media networking relationships with members of the District Attorney’s office, W.G.M. is not entitled to relief on this claim.
Further, “[it] is now common knowledge that merely being friends on Facebook does not, per se, establish a close relationship from which bias or partiality on the part of a juror may reasonably be presumed.” McGaha v. Commonwealth, 414 S.W.3d 1, 6 (Ky.2013).
In addressing a similar claim of error, the Supreme Court of Kentucky explained:
“Appellant asserts that the mere fact that each juror was a ‘Facebook Mend’ with April Brewer creates a presump *496 tion of juror bias and should have been disclosed during voir dire. Websites such as Facebook do require a member to affirmatively approve or deny requests to enter into a ‘friendship.’ Therefore, in order for the jurors to become ‘friends’ with April Brewer, either April Brewer would have been required to approve friendship requests from the jurors, or the jurors would have been required to approve requests from April Brewer. In either situation, the ‘friendship’ that the jurors had with April was not happenstance; there was an affirmative act to connect the parties.
“But ‘friendships’ on Facebook and other similar social networking websites do not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during voir dire. The degree of relationship between Face-book ‘friends’ varies greatly, from passing acquaintanceships and distant relatives to close friends and family. The mere status of being a ‘friend’ on Face-book does not reflect this nuance and fails to reveal where in the spectrum of acquaintanceship the relationship actually falls. Facebook allows only one binary choice between two individuals where they either are ‘friends’ or are not ‘friends,’ with no status in between.
“Indeed, some people have thousands of Facebook ‘friends,’ as was the case with April Brewer, which suggests that many of those relationships are at most passing acquaintanceships. This is further complicated by the fact that a person can become ‘friends’ with people to whom the person has no actual connection, such as celebrities and politicians. See, e.g., Robbie Woliver, Lady Gaga and her 10 million Facebook friends: celebrity worship syndrome, Psychology Today (July 3, 2010), http://www. psychologytoday.com/blog/alphabet-kids/ 201007/lady-gaga-and-her-10-million-facebook-friends-celebrity-worship-syndrome (noting that the singer Lady Gaga has ‘10 million Facebook friends [who] aren’t really her friends’). Thus, a Facebook member may be ‘friends’ with someone in a strictly artificial sense.”
Sluss v. Commonwealth, 381 S.W.3d 215, 222-23 (Ky.2012) (footnotes omitted).
Because the status of being a “friend” on Facebook does not necessarily equate to a close relationship from which a bias could be presumed, W.G.M. has failed to establish that he might have been prejudiced in the failure of the veniremembers to voluntarily disclose a social-media networking relationship with any member of the District Attorney’s office. W.G.M. is, therefore, due no relief on this claim.
II.
W.G.M. also contends that he was entitled to a new trial because, he argues, the circuit court did not allow the jury to watch a DVD of an interview conducted with the victim after the jury specifically requested to watch the DVD again during their deliberations.
The record indicates that Julie Knight, a social-service caseworker with the Department of Human Resources of Covington County, interviewed the victim. An audio recording of that interview was admitted as State’s Exhibit 1. The record also indicates that Chad Wright, a forensic interviewer with the Southeast Alabama Child Advocacy Center, conducted a separate interview of the victim. A DVD of that interview was introduced as Defense Exhibit 2 and played for the jury.
During its deliberations, the jury sent the circuit court a note informing the court that it “would like to see the Chad Wright DVD and hear the Julie Knight audio *497 again.” (C. 89; R. 409.) The record appears to indicate that the DVD player needed to play Defense Exhibit 2 was in use in another courtroom. The circuit court, with the consent of W.G.M., took a cassette tape player to the jury room to allow the jury to listen to State’s Exhibit 1 while a DVD player was being set up in the courtroom to allow the jury to watch Defense Exhibit 2. The circuit court later noted that, when it took State’s Exhibit 1 and the cassette tape player to the jury room, it
“instructed the jury to listen to that and when they got through with it to knock on the door and let [the circuit court] know they were through with that part of it and [the circuit court] would bring them back in [the courtroom] and let them watch the DVD.
“In the meantime, after about 30 minutes or so passed, they knocked on the door and they no longer required to see the DVD and they had a verdict. So that’s where we stand at the moment.”
(R. 410.) The jury then delivered its verdict.
At the outset, we note that this issue was not preserved for our review. When an objection based upon evidence being delivered to “the jury room during the deliberations of the jury is made after the verdict is returned, the objection is waived.” Smith v. State, 344 So.2d 1239, 1241 (Ala.Crim.App.1977). The record demonstrates that W.G.M. did not object before the jury reached its verdict. The issue is, therefore, not properly before us.
Moreover, even if W.G.M. had preserved this issue for appeal, he would not be entitled to any relief on this claim. A circuit court’s decision not to send evidence into the jury room is reviewed for an abuse 'of discretion. Parris v. State, 885 So.2d 813, 830 (Ala.Crim.App.2001). Section 12-16-14, Ala.Code 1975, provides that “[a]ll items of evidence and depositions read to the jury may be taken out by them on their retirement.” Further, Rule 22.1(b), Ala. R.Crim. P., states that, “[wjithin the exercise of its discretion, the court may permit the jurors, upon retiring for deliberation, to take with them exhibits, writings, and documents that have been received in evidence.”
The circuit court did not deny the jury the opportunity to view Defense Exhibit 2. In accommodating the jury’s request to listen to State’s Exhibit 1, it informed them that when they had finished listening to that exhibit they would be brought back into the courtroom to watch Defense Exhibit 2. Instead of doing so, the jury informed the circuit court that “they no longer required to see the DVD.” (R. 410.) Therefore, circuit court did not abuse its discretion by denying W.G.M.’s motion for a new trial on the basis that the jury did not have an opportunity to watch the DVD during deliberations.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.