# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,

    v.

AHMIR BAILEY,

       Defendant.

:
:
:
:
:
:
:
:

I.D. No. 1805009348A
Kent County

Submitted: February 14, 2020
Decided: March 16, 2020

## ORDER

Upon Defendant's Motion for a New Trial.
*Denied.*

Kevin B. Smith, Esquire and Gregory A. Babowal, Esquire of the Department of Justice, Dover, Delaware; attorneys for the State.

Zachary A. George, Esquire of Hudson Jones Jaywork & Fisher, LLC and Andre M. Beauregard, Esquire of Brown Shiels & Beauregard, LLC, Dover, Delaware; attorneys for the Defendant.

WITHAM, R.J.

## INTRODUCTION

Before the Court is Defendant's Motion for a New Trial, which Defendant seeks because he asserts that one of the jurors was not impartial based on the juror's alleged connection to a co-defendant. The Court has carefully considered the parties' submissions and arguments. The Court has also examined the applicable legal authority. For the reasons set forth below, Defendant's Motion for a New Trial is **DENIED.**

## FACTS AND PROCEDURE

1. Ahmir Bailey, Defendant ("Defendant") in this case, was found guilty of Murder in the First Degree and other related charges in a jury trial, which began on September 24, 2019, and ended on October 8, 2019.[1] Eugene Riley is a co-defendant ("Co-Defendant") in this matter, who pled guilty to Murder in the Second Degree on December 12, 2019.[2] During the *voir dire*, one of the potential jurors, Deshawn Riley, ("Prospective Juror") was questioned about his possible connection to Co-Defendant as a result of them having the same surname.[3] Prospective Juror stated that Co-Defendant was his cousin, after which he was dismissed for cause.[4] Another juror among the panel, who did not come forward during the *voir dire*, was eventually

---

[1] Defendant's Motion for a New Trial (hereinafter "Def. Mot.") ¶ 1.

[2] The two matters had been previously severed.

[3] *Id.* at ¶ 3. Dashawn Riley was later discovered to be a distant cousin of Co-Defendant *and also* a cousin of Juror #4, one of the jurors selected to serve in this case. The only connection between Juror #4 and Co-Defendant was determined to be their connection to Deshawn Riley.

[4] *Id.* at ¶ 4-5.

selected as Juror #4 in Defendant's trial.[5] After the jury returned the verdict, Defense counsel performed a Facebook search of all the jurors.[6] The search revealed that both Juror #4 and Co-Defendant had a mutual Facebook friend.[7] The mutual Facebook friend was determined to be Prospective Juror who was dismissed earlier.[8]

2. This Court held a hearing on December 13, 2019, and considered a brief continuance for Defense to conduct further investigation into the possible connection.[9] This Court ordered Defendant to refrain from contacting the jury without the Court's authorization. However, the hearing revealed that Defense counsel hired a private investigator to look into the connection between Juror #4 and Co-Defendant. After learning about the investigation, the Court ordered any information already obtained from Juror #4 post-trial by Defense counsel to be shared with the State.

## PARTIES' CONTENTIONS

3. Defense argues that this connection between Juror #4 and Co-Defendant impacted the Juror's ability to be impartial in this trial because Defendant's

---

[5] *Id.* at ¶ 6.

[6] *Id.* at ¶ 7. Defense admits that the search was done *after* the trial.

[7] *Id.* at ¶ 8-9.

[8] *Id.*

[9] The State initially did not object to the continuance. However, after Defense counsel admitted to using the services of a private investigator, who contacted Juror #4 after the trial, the State changed its position. The Court did not authorize Defense counsel to use the services of a private investigator to communicate with jurors.

3

conviction could exonerate his Co-Defendant.[10] Therefore, Defense argues that Juror #4 may have had an incentive to convict Defendant and claims that the discovery of this connection would have also constituted grounds for Juror #4's dismissal for cause.[11] In the Opening Brief, authorized by this Court, Defense states that Juror #4 and Co-Defendant's cousin, Prospective Juror who was dismissed for cause, are related.[12] Defense further asserts that Juror #4's father is the brother of Prospective Juror's mother.[13] It follows, therefore, that Juror #4 and Co-Defendant, Eugene Riley, also have a familial relationship, according to Defendant's argument.[14]

4. The State contends that Defendant's Motion does not lay out any entitlement to relief.[15] The State argues that a juror being a Facebook friend with a third-degree relative of a co-defendant would not have been enough to sustain a challenge for cause, and it does not support a request for a new trial.[16] The State also contends that

---

[10] *Id.* ¶ 10-11.

[11] *Id.* at ¶ 11.

[12] Superior Court Criminal Rule 33 Motion for a New Trial Defendant's Opening Brief ("Def. Brief") at 8.

[13] *Id.*

[14] *See Id.* at 8-9.

[15] State's Reply to Defendant's Motion for a New Trial ("St. Reply") ¶ 1.

[16] *Id.* The State, unlike Defense in this case, requested to file a Sur-reply after Defense filed Defendant's Reply to the State's Response to Defendant's Motion for a New Trial without requesting a leave of Court. Additionally, Defense chose to use a private investigator without the Court's authorization to inquire into Juror #4's background and affiliations.

no prejudice resulted from the later discovered connection Juror #4 had with Co-Defendant because they did not even know each other personally.[17]

## STANDARD OF REVIEW

5. Superior Court Criminal Rule 33 states that "[t]he Court on motion of a defendant may grant a new trial to that defendant if required in the interest of justice."[18] A new trial is appropriate "only if the error complained of resulted in actual prejudice or so infringed upon defendant's fundamental right to a fair trial as to raise a presumption of prejudice."[19] When it comes to cases involving juror misconduct, "a defendant is entitled to a new trial only where the circumstances are so egregious as to be inherently prejudicial, or where the defendant can show that the misconduct caused actual prejudice."[20] Therefore, Defendant has the burden of demonstrating the improper influence to a juror and actual prejudice to the impartiality or the presence of some egregious circumstances.[21] Because the trial judge can measure the risk of prejudice best based on the events at the trial, the trial judge has "very broad

---

[17] State's Answering Brief ("St. Brief") at 6-7.

[18] Super. Ct. Crim. R. 33.

[19] *State v. Johnson*, 2018 WL 3725748 at *2 (Del. Super. July 25, 2018) (quoting *Hughes v. State*, 490 A.2d 1034, 1043 (Del. 1985)).

[20] *Miller v. State*, 2005 WL 1653713 at *2 (Del. July 12, 2005).

[21] *Flonnory v. State*, 778 A.2d 1044, 1054-55 (Del. 2001) (citing *Sheeran v. State*, 526 A.2d 886 (Del. 19870) (talking about defendant's burden); (citing Massey v. State, 541 A.2d 1254, 1259 (Del. 1988) (talking about egregious circumstances ).

*State v. Ahmir Bailey*
I.D. No. 1805009348A
March 16, 2020

discretion" when deciding whether to grant a new trial.[22]

## DISCUSSION

6. First, it should be mentioned that Defense counsel claimed privilege in connection with the information *improperly* obtained from Juror #4. The Court is now prepared to make the decision on the issue of the new trial based on the information before it and the record of this case as it exists at this time. It does not appear to the Court that further investigation is appropriate in light of all of the circumstances, including the fact that Defendant's counsel's investigator improperly contacted Juror #4, as well as the Juror's family and friends, without the Court's permission or supervision.

7. The fact that Defense counsel engaged in this practice through an investigator is a violation of the Delaware Lawyers' Rule of Professional Conduct 3.5.[23] According to the Rule, an attorney should not "communicate with a juror or prospective juror after discharge of the jury unless the communication is permitted by court rule…"[24] This Court did not authorize any communication with the jury after the trial in this case. Even if Defendant's counsel did not contact the jurors directly after the trial was over, his agent, the investigator working on counsel's behalf, did so. If counsel did not expressly direct the investigator to contact the jurors, it would

---

[22] *Johnson,* 2018 WL 3725748 at *2 (quoting *Styler v. State,* 417 A.2d 948, 953 (Del. 1980) (holding that the trial judges have "very broad discretion" in determining whether an entire case needs to be retried)).

[23] Del. Lawyers' R. Prof'l Conduct 3.5©.

[24] *Id.; see also State v. Cabrera,* 984 A.2d 149 (Del Super. 2008).

not change the fact that the investigator was counsel's agent when he conducted the interviews. Additionally, the investigator's report indicated that Juror #4 did not know and never even met Co-Defendant.[25] Furthermore, the report stated that Juror #4 had no knowledge of the fact that his cousin, Prospective Juror, who he was not very close with, was also Co-Defendant's distant cousin on the other side of the family.[26]

8. In this case, it does not appear that justice requires a new trial. Even taking into consideration the fact that Juror #4 and the common Facebook friend he has with the Co-Defendant know each other socially in addition to their on-line connection, a new trial is still not required because this connection does not prejudice Defendant. That is especially true given the fact that, per Defenses' own investigation, Juror #4 does not know the Co-Defendant.[27] The United States Constitution, as well as the Delaware Constitution, guarantee criminal defendants the right to have their cases brought before an impartial jury.[28] Non-disclosure of material information by a juror during the *voir dire* may result in prejudice to a defendant.[29] Defense must demonstrate the juror's failure to disclose material information that a proper disclosure would have provided a basis for a challenge for cause in order to establish

---

[25] Superior Court Criminal Rule 33 Motion for a New Trial Appendix, Tab 2 at 3-4.

[26] *See Id.* at 4.

[27] Def. Brief at 8.

[28] *State v. Cooke*, 2012 WL 3060956 at *6 (Del. Super. July 25, 2012).

[29] See *Banther v. State*, 783 A.2d 1287, 1290 (Del. 2001).

reversible error in the inadvertent, non-disclosure cases.[30]

9. In this case, Juror #4's conduct and connections did not result in any prejudice to Defendant because any connection he may have had to Co-Defendant proved to be insignificant, as well as an unknown relationship. Furthermore, Defense did not allege facts that would lead this Court to conclude that Juror #4 purposefully concealed some material information during the *voir dire*.[31] Any possible inadvertent non-disclosure would not have resulted in a valid basis for a challenge for cause if it was corrected because the connection between Juror #4 and Co-Defendant was too weak, especially when Defense's investigator noted that Juror #4 claimed not to know Co-Defendant.[32]

10. As a threshold matter, having a connection on Facebook does not mean that two people know each other in any significant way. This is especially true in this case, based on the fact that Juror #4 has 860 Facebook friends.[33] It is plausible that Juror #4 does not even remember all the people he is connected to as "friends" on Facebook. It is even more plausible that Juror #4 does not communicate with all his 860 Facebook "friends." Therefore, their Facebook connection alone would not have been enough to exclude Juror #4 in the first place.

---

[30] *Banther v. State*, 783 A.2d 1287, 1291 (Del. 2001) (citing *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. at 556 (1984)).

[31] Jurors were asked about Defendant's friends, which the Co-Defendant was at some point.

[32] Superior Court Criminal Rule 33 Motion for a New Trial Appendix, Tab 2 at 3-4.

[33] St. Response ¶ 6.

11. Courts in other jurisdictions addressed similar situations and came to the conclusion that Facebook "friendship" alone did not carry enough weight to conclude that a juror was biased.[34] For example, in *Sluss*, the court concluded that being friends on Facebook "[does] not necessarily carry the same weight as true friendships or relationships in the community, which are generally the concern during *voir dire*."[35] The court further explained that the degree of friendship between people connected on Facebook as "friends" varies, and the status as "friends" on this Website does not reflect the true nature of relationships between people.[36] One of the reasons why such "friendship" does not represent true relationships between people is the fact that Facebook only allows one choice for individuals – either to be "friends" or not to be "friends."[37] The use of the moniker "friends" is very broad and somewhat amorphous.

12. The fact that Juror #4 later admitted to knowing this mutual Facebook friend in real life and even being related to him still does not prejudice Defendant unfairly. Moreover, Juror #4's distant familial connection to Co-Defendant, whom he did not even know, did not prejudice Defendant because the connection is too tenuous. "A defendant must show a 'reasonable probability' that a juror has been

---

[34] *Sluss v. Comm.*, 381 S.W.3d 215 (Ky. 2012); *Slaybaugh v. State*, 44 N.E.3d 111 (Ind. Ct. App. 2015); *W.G.M. v. State*, 140 So.3d 491 (Ala. Crim. App. 2013); *State v. Webster*, 865 N.W.2d 223 (Iowa, 2015).

[35] *Sluss*, 381 S.W.3d at 222.

[36] *Id.*

[37] *Id.*

9

biased by outside influences in order to require a new trial or evidentiary hearing."[38] Here, Defendant failed to provide facts that would support a reasonable probability that the Juror was somehow influenced and that Defendant was prejudiced by such influence. According to the investigation report, Juror #4 did not know Co-Defendant, never met him, and knew nothing about his connection to the Juror's friends and family members, including their mutual Facebook friend.[39] Similarly, Defendant failed to provide sufficient facts establishing the presence of the egregious circumstances.

13. Furthermore, "[i]f the issue is not raised during the progress of the trial, defendant and its counsel cannot expect the matter to end up to his advantage."[40] In *Halko*, the court noted that the defense could not wait to bring up a potential issue until after the trial and simply "sit back and wait to see what the verdict is."[41] Sometimes newly discovered evidence indeed warrants a new trial.[42] However, a new trial is only proper if the evidence would have changed the result of the case, *and* it could not have been discovered during the trial.[43] Therefore, it does not appear that

---

[38] *McDonald v. State*, 1992 WL 276371 at *1 (Del. Sept. 23, 1992) (citing *Massey v. State*, 541 A.2d 1254, 1257 (Del. 1988)).

[39] Superior Court Criminal Rule 33 Motion for a New Trial Appendix, Tab 2 at 3-4.

[40] *State v. Halko*, 193 A.2d 817, 831 (Del. Super. 1963).

[41] *Id.*

[42] *Hicks v. State*, 913 A.2d 1189, 1193-94 (Del. 2006).

[43] *Id.*

the new information in this case would constitute sufficient grounds for a new trial because it is not likely to change the result of the trial, *and* it could have been discovered during the trial by *checking the jurors' Facebook profiles earlier*. No new information was brought to the parties' attention prior to Defense's investigation of the jurors' Facebook profiles. Therefore, it could have been done at any time during the trial.

14. Defense also asked for an evidentiary hearing for further *voir dire* of Juror #4, Prospective Juror, and Prospective Juror's mother.[44] The trial court has "broad discretion in determining the mode and depth of investigative hearings into allegations of juror misconduct and the appropriate remedy."[45] Here, as opposed to *Sluss*, for example, where the court granted an evidentiary hearing, the Juror did not make any misrepresentations during the *voir dire* process, which otherwise could warrant a further inquiry into the Juror's possible bias.[46] The reason Juror #4 did not bring up his connection to Eugene Riley appears to be the fact that he was not asked about it directly during the *voir dire*, and he also did not know Eugene Riley and was likely unaware of any familial linking to him or his connection to Prospective Juror.[47]

---

[44] Def. Brief at 4.

[45] *Massey v. State*, 541 A.2d 1254, 1257 (Del. 1998).

[46] *See Sluss*, 381 S.W.3d at 221.

[47] The investigator's report mentions Juror #4 talking about Eugene Riley in connection with a possible reason why Prospective Juror was dismissed as a juror. However, jurors were not directly asked about Eugene Riley during the *voir dire*. The fact that the investigator engaged in the discussion about Defendant Bailey and his Co-Defendant Riley may have subjected Juror #4 to information previously unavailable and not meant to be available to him, which shows why such

*State v. Ahmir Bailey*
I.D. No. 1805009348A
March 16, 2020

Therefore, Juror #4 did not have any meaningful connection with Co-Defendant and did not fail to identify material information during the *voir dire*. Given all of the circumstances of this case, an evidentiary hearing is not appropriate at this stage of the proceedings.

## CONCLUSION

For the reasons mentioned above, Defendant's Motion for a New Trial is **DENIED**.

**IT IS SO ORDERED.**

Hon. William L. Witham, Jr,
Resident Judge

WLW/dmh
oc:    Prothonotary
cc:    Gregory A. Babowal, Esquire
        Kevin B. Smith, Esquire
        Andre M. Beauregard, Esquire
        Zachary A. George, Esquire

---

interviews are improper without court supervision.