BRYAN, Justice.
Dr. Ann M. Mottershaw and The Radiology Group, LLC, appeal separately from the trial court’s order granting a motion for a new trial filed by the plaintiff, Shannon Ledbetter, as administrator of the estate of Venoria Womack, deceased. These appeals primarily concern whether the trial court exceeded its discretion in ordering a new trial based on the jury’s exposure to certain evidence that the trial court had excluded by an order granting a motion in limine.
On May 11, 2007, Womack underwent a CT scan of her sinuses. Dr. Mottershaw, a radiologist employed by The Radiology Group, read the CT scan. Evidence at trial indicated that Dr. Mottershaw, in reading the CT scan, failed to detect a cancerous mass in Womack’s sinuses. Two weeks later, on May 25, 2007, Wom-ack underwent another CT scan. The radiologists who read that scan also failed to detect the mass in Womack’s sinuses. Unlike Dr. Mottershaw, those radiologists were not employees of The Radiology Group. A few months later, on August 6, 2007, Womack underwent an MRI of her head. The radiologist who read the MRI detected the cancer in Womack’s sinuses. Womack subsequently underwent treatment for her cancer at Shands Medical Center in Gainesville, Florida. However, on March 6, 2008, Womack died.
In April 2009, Ledbetter, as administrator of Womack’s estate, sued various health-care providers, alleging medical malpractice and wrongful death. The complaint alleged that the defendants breached the applicable standard of care by failing to timely diagnose Womack’s cancer. Among the defendants were Dr. Mottershaw and her employer, The Radiology Group. Eventually, all the defendants except Dr. Mottershaw and The Radiology Group were dismissed.
On September 6, 2011, Ledbetter filed a motion in limine seeking, among other things, to prevent reference to or presentation of any evidence indicating “[t]hat other health care providers [besides Dr. Mottershaw and The Radiology Group] allegedly failed to detect Venoria Womack’s nasopharyngeal cancer.” The trial court granted the motion in limine insofar as it requested that restriction, among other restrictions not relevant here.
On October 3, 2011, the case against Dr. Mottershaw and The Radiology Group proceeded to trial. During opening statements, Dr. Mottershaw’s attorney noted that Dr. Mottershaw had read the CT scan of May 11, 2007. Dr. Mottershaw’s attorney then stated that “[t]wo weeks later there was another set of images done.” At that point, Ledbetter’s attorney asked to approach the bench and an off-the-record discussion was held. During the trial, Dr. Mottershaw’s attorney asked Dr. Kendall Jones, who provided expert testimony for Ledbetter:
“Q. Now, you got not only the May 11 images that we have talked about that were done by Dr. Mottershaw, but you also got other images from [Ledbetter’s] lawyer, right?
*48 “A. Yes.
“Q. And you got a study that was done two weeks later. May 25, right?”
At that point, Ledbetter’s attorney asked to approach the bench, and the following discussion occurred outside the presence of the jury:
“MRS. TAYLOR [Ledbetter’s attorney]: Your Honor, that reference to the May 25 [scan] is strictly in opposition to Your Honor’s order on motion in limine. He has been instructed not to mention May 25 studies.
“He was instructed in the order on motion in limine, initially. He was instructed in the middle of opening statement. And here we go again. And we don’t know what to say other than it’s in blatant violation.
“MR. HINTON [Dr. Mottershaw’s attorney]: Well, Judge, I don’t recall being told don’t talk about May 25.
[[Image here]]
“THE COURT: I ruled that the May 25th stuff doesn’t come in.
“MR. HINTON: Nothing about May 25 comes in?
“THE COURT: No.
“MR. HINTON: My case is completely gutted.
“THE COURT: ... [Y]our case is about whether there was malpractice committed when [Dr. Mottershaw] missed the stuff on ... May 11th.
[[Image here]]
“THE COURT: ... The [May] 25th study gets in to accusing another doctor of missing something. That’s not what we are here for.
[[Image here]]
“THE COURT: ... The 25th is out, again.”
Later at trial, Dr. Mottershaw submitted a copy of Womack’s medical records from Shands Medical Center, which was labeled as Defendant’s Exhibit 7. Defendant’s Exhibit 7, which was admitted without objection, contained information about the May 25 CT scan. Specifically, the records stated, in pertinent part:
“05/25/2007: She underwent a CT of the head at an outside facility. The report is unavailable for review, but on review of the actual images, there is a mass in the right nasopharynx. The neck was not imaged.
[[Image here]]
“IMAGING REVIEW: Dr. [Jeffrey] Bennett reviewed an outside CT dated 05/25/2007. This shows a mass in the central nasopharynx and a large positive right retropharyngeal lymph node.”
After Defendant’s Exhibit 7 was admitted, Ledbetter’s attorney reminded the trial court that references to the May 25 CT scan in the exhibit needed to be redacted to comply with the trial court’s order in limine:
“MRS. CHAMBERS [Ledbetter’s attorney]: We need to make sure those records are redacted that you put in.
[[Image here]]
“MRS. CHAMBERS: We’ve redacted ours.
“THE COURT: We’ve got to redact — Let’s see.
“I wrote down th[at] Defense Exhibit 6 has got to be redacted.
[[Image here]]
“THE COURT: And 7.
[[Image here]]
“THE COURT: Now, Defense 6 and 7 are two that /all need to look through to make sure they’re redacted.”
Before closing arguments, Matt Griffith, an attorney for Dr. Mottershaw, told the trial court that, pursuant to the order granting the motion in limine, “we have *49 redacted Defense Exhibit 5, 6, and 7.” However, the references to the May 25 CT scan were not redacted from Defendant’s Exhibit 7.
After closing arguments, the trial court asked the court reporter if “the exhibits in the trial have been looked at by .both sides” and whether “they are ready to go back.” The court reporter responded affirmatively. The trial court then asked whether “[b]oth sides have looked at those,” and the attorneys for both sides responded affirmatively. The case went to the jury on October 6, 2011. After deliberating for approximately 30 minutes, the jury sent a written question to the trial court: “Can we have a copy of the judge’s instruction (charge) [a]nd what about the test from the 25th? ” (Emphasis added.) Up to that point, the parties and the trial court were unaware that the references to the May 25 CT scan had not been redacted from Defendant’s Exhibit 7. In response to the question about “the test from the 25th,” the trial court answered: “All of the properly admitted exhibits have been provided to you.” After a few hours of deliberation, the jury returned a verdict in favor of Dr. Mottershaw and The Radiology Group. On October 31, 2001, the trial court entered a judgment on the jury verdict.
At some point after the jury returned its verdict, Ledbetter’s attorney reviewed the exhibits that had been sent to the jury-deliberation room. Ledbetter’s attorney then discovered that the two references to the May 25 CT scan in Defendant’s Exhibit 7 had not been redacted despite the order granting the motion in limine.
Ledbetter moved for a new trial, asserting several grounds. Following a hearing, the trial court entered an order granting a new trial. After discussing the pertinent procedural history of the case, the order stated, in part:
“[Ledbetter] contends this unredacted evidence was considered by the jury, and that it was prejudicial to [Ledbet-ter] in the jury’s deliberations that resulted in a verdict for [Dr. Mottershaw and The Radiology Group]. It is a well-settled principle of law, and, further, it is fundamental to a fair trial, that jurors should consider only the evidence properly admitted at trial. It is error for a jury to receive an exhibit not admitted into evidence. Ex parte Troha, 462 So.2d 953, 954 (Ala.1984).... Although the Court received Defendant’s Exhibit 7 into evidence, it excluded the evidence within that exhibit of the May 25th CT scan. Thus, the jury’s receipt of the unredacted Exhibit that contained evidence that was never admitted into evidence by the Court was error.
“The Court recognizes that not every instance of juror misconduct requires or warrants a new trial. Reed v. State, 547 So.2d 596 (Ala.1989). ‘Each case involving juror misconduct must be judged by its own peculiar facts, and the conduct, when found to be prejudicial, will require a reversal.’ Dawson v. State, 710 So.2d 472, 474 (Ala.1997). As a general matter, issues of jury misconduct arise where a juror allegedly is exposed to outside influences such as extraneous evidence, reviews unadmitted exhibits, or engages in unauthorized communications. There is no allegation of juror misconduct per se in this case.... The allegation is that the jury was improperly exposed to extraneous material in the medical records that was ordered to be redacted.
“... [C]ases involving the introduction of unadmitted exhibits warrant a new trial when one of two requirements is met: (1) the extraneous material is of such a nature as to constitute prejudice as a matter of law; or (2) the jury *50 verdict is shown to have been actually prejudiced by the extraneous material. Ex parte Apicella, 809 So.2d 865, 870 (Ala.2001)- Having considered the specific circumstances of this case, the Court concludes that the jury’s exposure to and consideration of extraneous information in the form of the unredacted medical records which evidenced the May 25th scan resulted in prejudice as a matter of law and in actual prejudice to [Ledbetter] requiring a new trial.
“In some cases, the character and nature of the extraneous material constitute prejudice as a matter of law and no showing that the jury is in fact influenced thereby in arriving at their verdict is necessary. Ex parte Arthur, 835 So.2d 981, 984 (Ala.2002). Presumed prejudice, or prejudice as a matter of law, applies only in a case in which the jury’s consideration of the extraneous material was crucial in resolving a key material issue in the case. Dawson v. State, 710 So.2d 472, 475 (Ala.1997)....
“The jury’s consideration of the references to the May 25th scan was crucial in resolving a key material issue in this case. [Ledbetter] had moved in limine to preclude any evidence that other health care providers allegedly failed to detect Venoria Womack’s cancer. [Led-better] anticipated that [Dr.] Motter-shaw would argue that the radiologist who took the May 25th scan with contrast also failed to detect the cancer. The Court granted [the] motion in li-mine and specifically told Dr. Motter-shaw’s counsel not to reference the May 25th scan. There is no dispute that extraneous material was actually received by the jurors. Obviously, the jurors were aware of the May 25th scan and thought it should be considered because they specifically requested it after they began deliberating. Defendant’s Exhibit 7, which contained unredacted references to the May 25th scan, was relevant to a key material issue in the case. This extraneous information resulted in prejudice as a matter of law.
“Even if the extraneous information had not resulted in prejudice as a matter of law, the Court would grant the motion for new trial because the extraneous information resulted in actual prejudice to [Ledbetter]. When a court is determining whether a juror’s conduct has caused actual prejudice, the standard applied is whether the extraneous material might have influenced that juror and others with whom he deliberated. Ex parte Dobyne, 805 So.2d 763, 771 (Ala.2001) (‘the test is whether the [movant] might have been prejudiced, not whether he actually was prejudiced, by such misconduct’), overruled in part on other grounds by Ex parte Burgess, 21 So.3d 746 (Ala.2008)-No single fact or circumstance will determine whether the verdict rendered in a given case might have been unlawfully influenced by a juror’s misconduct. Reed v. State, 547 So.2d 596, 598 (Ala.1989). Rather, it is a case’s own peculiar set of circumstances that will decide the issue....
[[Image here]]
“Having observed the unredacted exhibit and all of the evidence properly admitted, the Court is in the best position to assess the possible prejudicial effect the unredacted May 25th references may have had on the jury. The Court finds that the jury’s receipt of extraneous material in the unredacted Defendant’s Exhibit 7 which involved the May 25th scan with contrast might have unlawfully influenced the jury’s verdict for the Defendants. All references to the May 25th scan had been excluded by order of the Court. There is no doubt that the jury considered the extraneous material in Defendant’s Trial *51 Exhibit 7 as evidenced by the jury’s question. The jury asked to see a copy of the report from the 25th after they started deliberating. The reference to a May 25th scan might have influenced all of the jurors....
[[Image here]]
“Having concluded that [Ledbetter] is entitled to a new trial based on the jury’s consideration of an exhibit that was not admitted into evidence, this Court concludes that it is not necessary to reach [Ledbetter’s] remaining grounds for new trial.”
Dr. Mottershaw and The Radiology Group filed separate appeals, which we consolidated for the purpose of writing one opinion. On appeal, The Radiology Group adopted Dr. Mottershaw’s brief. For ease of discussion, we will refer simply to the arguments of “Dr. Mottershaw,” with the understanding that those arguments have been adopted by The Radiology Group.
On appeal, Dr. Mottershaw argues that the trial court erred in ordering a new trial based on the jury’s consideration of the unredacted evidence regarding the May 25 CT scan. Initially, we note that Dr. Mot-tershaw argues at various points that this case is not, as the trial court stated, an “extraneous-material” case; thus, she says, the cases relied on by the trial court are inapplicable. She seems to draw a distinction between cases in which jurors themselves brought extraneous materials into the jury-deliberation room and the facts of this case, in which the jurors were inadvertently exposed to material that should have been redacted. However, she does not point to any case relying on such a distinction for purposes of evaluating the effect of improper exposure. In both types of cases, the key point is that jurors were exposed to material they should not have seen, ie., “extraneous material.” Thus, Dr. Mottershaw’s argument is largely one of semantics.[1]
Dr. Mottershaw first argues that, in ordering a new trial, the trial court failed to give the required deference to the jury’s verdict. Dr. Mottershaw cites cases generally indicating that a jury’s verdict is presumed to be correct and should be set aside only if the verdict is “palpably wrong or manifestly unjust.” Bradford v. Kimbrough, 485 So.2d 1114, 1116 (Ala.1986). In making this argument, Dr. Mottershaw essentially confuses, on the one hand, the standard for reviewing a motion for a new trial grounded on the argument that the verdict is against the great weight of the evidence with, on the other hand, the standard for reviewing a motion for a new trial grounded on the argument that the jury considered extraneous evidence. This Court has stated that the trial court has discretion in cases such as this one and that we must give deference to the trial court’s decision:
“Where a motion for a new trial is granted for reasons ‘other than, or in addition to, a finding that the verdict [was] against the great weight or preponderance of the evidence,’ this Court applies a standard of review that is more deferential to the trial court’s determination that a new trial is warranted. Curtis v. Faulkner Univ., 575 So.2d 1064, 1065 (Ala.1991). Where a trial court grants a motion for a new trial for *52 grounds other than, or in addition to, that the verdict is against the great weight of the evidence, this Court’s review is limited:
“ ‘ “It is well established that a rul- ■ ing on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.” ’
“Kane v. Edward J. Woerner & Sons, Inc., 543 So.2d 693, 694 (Ala.1989) (quoting Hill v. Sherwood, 488 So.2d 1357, 1359 (Ala.1986)).”
Beauchamp v. Coastal Boat Storage, LLC, 4 So.3d 443, 449-50 (Ala.2008). Because Dr. Mottershaw relies on the incorrect standard in her first argument, i. e., the standard applicable to a sufficiency-of-the-evidence argument, her first argument is unavailing. The main issue, which Dr. Mottershaw tangentially addresses in some of her arguments, is whether the trial court exceeded its discretion in ordering a new trial; the main issue does not involve whether the verdict is supported by sufficient evidence.
We next address the underlying standard informing the trial court’s discretion in this case. Generally, the introduction of extraneous materials warrants a new trial if either “1) the jury verdict is shown to have been actually prejudiced by the extraneous material; or 2) the extraneous material is of such a nature as to constitute prejudice as a matter of law.” Ex parte Apicella, 809 So.2d 865, 870 (Ala.2001). In this case, the trial court found both actual prejudice and prejudice as a matter of law. Regarding the concept of “actual prejudice,” this Court has stated:
“ ‘The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered.’
“[Roan v. State,] 225 Ala. [428,] 435, 143 So. [454,] 460 [ (1932) ].
“On its face, this standard would require nothing more than that the defendant establish that juror misconduct occurred ....
“However, as other Alabama cases establish, more is required of the defendant. In Reed v. State, 547 So.2d 596, 598 (Ala.1989), this Court addressed a similar case of juror misconduct:
“ ‘We begin by noting that no single fact or circumstance will determine whether the verdict rendered in a given case might have been unlawfully influenced by a juror’s [misconduct]. Rather, it is a case’s own peculiar set of circumstances that will decide the issue.... ’
“It is clear, then, that the question whether the jury’s decision might have been affected is answered not by a bare showing of juror misconduct, but rather by an examination of the circumstances particular to the case.”
Ex parte Apicella, 809 So.2d at 871.[2]
The circumstances of this case indicate that the trial court did not exceed its *53 discretion in concluding that the unredact-ed references to the May 25 CT scan in Defendant’s Exhibit 7 might have improperly influenced the jury. After deliberating for about 30 minutes, the jury specifically asked the trial court: “[Wjhat about the test from the 25th?” The trial court, unaware that references to the May 25 CT scan had not been redacted from the exhibit, answered: “All of the properly admitted exhibits have been provided to you.” The jury’s question, coupled with the trial court’s answer, suggests that the jury considered information that had actually been prohibited by the order granting the motion in limine. Evidence indicating that a May 25 CT scan showed that Wom-ack had cancer — but that the cancer remained undetected — reasonably could have influenced the jury in determining the liability of Dr. Mottershaw, who read the earlier CT scan of May 11 and failed to detect the cancer. Dr. Mottershaw argues that the trial court’s determination that there was actual prejudice is based on speculation; however, the circumstances need to indicate only that there might have been prejudice. Ex parte Apicella. Based on the circumstances, the trial court did not exceed its discretion in determining that the jury might have been improperly influenced by extraneous material, ie., that there was so-called “actual prejudice.” Because the trial court did not exceed its discretion in finding actual prejudice, we need not consider whether the trial court exceeded its discretion in finding prejudice as a matter of law.
Dr. Mottershaw also argues that the trial court erred in ordering a new trial because, she says, “the jury’s consideration of the existence of the date of the May 25 images was not ‘crucial in resolving a key material issue in the case.’ ” Dr. Motter-shaw’s brief at 42. By arguing that the material was not “crucial in resolving a key material issue in the case,” Dr. Mot-tershaw refers to the test for determining whether the extraneous material caused “prejudice as a matter of law.” See Ex parte Apicella, 809 So.2d at 872 (“Generally, a presumption of prejudice [as a matter of law] applies only in a case in which the jury’s consideration of the extraneous material was ‘ “crucial in resolving a key material issue in the case.” ’ ” (quoting other cases)). The trial court found both prejudice as a matter of law and actual prejudice in this case. Because we conclude that the trial court did not exceed its discretion in finding actual prejudice, we need not address the trial court’s alternate finding of prejudice as a matter of law. Thus, we do not address Dr. Mottershaw’s argument that there was no prejudice as a matter of law.
The deferential standard of review in this case is well illustrated in Gold Kist, Inc. v. Tedder, 580 So.2d 1321 (Ala.1991), a case similar to this one. In Gold Kist, the jury returned a verdict in favor of the defendant in a negligence/wantonness case arising out of an automobile accident. The trial court granted a motion for a new trial on the ground that the jury may have been improperly influenced by an unadmitted exhibit that was left in the courtroom while the jury deliberated there.
At the trial in Gold Kist, one of the issues was whether the automobile accident caused the plaintiffs hip condition. As defenses, the defendant attempted to prove that the plaintiff had previously injured her hip, that she had a previous hip condition that had begun to affect her hip before the accident, and that the plaintiffs alcoholism had contributed to the hip condition. During the trial, the defendant *54 constructed a chronology of medical events concerning the plaintiff, including her earlier hip problems and treatment for alcohol abuse. That chronology was listed on a large paper tablet and was placed on a easel in the courtroom. The list was referenced during trial but was never offered or admitted into evidence. However, it was left within sight of the jury during its deliberations, despite the trial court’s instruction to the parties to remove their materials. In moving for a new trial, the plaintiff argued that the jury had been impermissibly influenced by the list, and the trial court granted the new trial.
In affirming the trial court’s order, this Court noted that the grant or denial of a motion for a new trial lies “largely within the discretion of the trial court,” that it is presumed correct, and that it will not be reversed “unless some legal right was abused and the record plainly and palpably shows that the trial court was in error.” 580 So.2d at 1322. This Court then concluded that the trial court did not err in granting a new trial based on the trial court’s conclusion “that the jury might have been unlawfully influenced by having the easel in the room where it deliberated.” 580 So.2d at 1323. See also Padgett v. Hughes, 535 So.2d 140, 143 (Ala.1988) (stating that a trial court did not exceed its discretion in ordering a new trial after the jury was exposed to improper evidence and noting that “[t]he trial court could not, nor can we, speculate as to what effect this improper evidence may have had on the jury”).
Dr. Mottershaw presents several other arguments. She argues that the trial court wrongly excluded mention of the May 25 CT scan in the first place. In making that argument, Dr. Mottershaw notes that the complaint, which was never amended, also alleged claims against a radiologist who read the May 25 CT scan but failed to detect the cancer. However, the claims against that radiologist were later dismissed; the only claims that went to trial were those against Dr. Mottershaw and her employer, The Radiology Group. Dr. Mottershaw also notes that the trial court allowed testimony by Dr. Jeffrey Bennett, Womack’s physician, regarding the May 25 CT scan to be presented as an offer of proof. She argues that the “[t]he use of those images ... for diagnosis and treatment [purposes] was then made clear” and, “[w]ith that revelation, it became further clear that the Court’s ... ruling excluding the May 25 images was erroneous.” Dr. Mottershaw’s brief at 31-32. Although it is unclear, the gist of Dr. Mottershaw’s argument seems to be that the trial court erred by determining that the potential prejudicial impact of the fact of the existence of the May 25 scan substantially outweighs its probative value. However, her argument is conclusory, and she does not present any authority establishing that the order granting the motion in limine is erroneous given the particular facts of this case. “It is well established that it is not the function of an appellate court to create, research, or argue an issue on behalf of the appellant.” Gonzalez v. Blue Cross/Blue Shield of Alabama, 760 So.2d 878, 883 (Ala.Civ.App.2000). Thus, her argument is unpersuasive.
Dr. Mottershaw also argues that Ledbetter’s argument for a new trial was not “preserved.” Dr. Mottershaw’s argument seems to have two prongs. First, Dr. Mottershaw notes that Ledbetter did not object to the admission of Defendant’s Exhibit 7, the medical records that included references to the May 25 CT scan. Dr. Mottershaw cites caselaw in which this Court has held that a trial court exceeded its discretion by ordering a new trial based on bad jury charges in the absence of a timely objection to those jury charges. *55 See, e.g., Beiersdoerfer v. Hilb, Rogal & Hamilton Co., 953 So.2d 1196, 1210 (Ala.2006). However, that is not the situation we have here. Although Ledbetter did not object to the admission of Defendant’s Exhibit 7 — the medical records that included references to the May 25 CT scan — the trial court had already ruled in its order granting the motion in limine that references to the May 25 scan would be excluded. The trial court reminded the parties that parts of Defendant’s Exhibit 7 needed to be redacted to comply with the order in limine. Dr. Mottershaw cites no authority indicating that a failure to object under these circumstances precludes the trial court from considering Ledbetter’s argument for a new trial, which relied on the order granting the motion in limine. This is not a case where a party failed to properly object and thereby waived any argument in support of a new trial.
In the second prong, Dr. Motter-shaw argues Ledbetter waived her argument on which she based her motion for a new trial because she failed to object when Dr. Bennett made a passing reference to the May 25 CT scan at trial. At trial Dr. Bennett testified:
“Q. [By Ledbetter’s attorney:] And in your deposition, you describe the progression involving the carotid sheath from May 11th until when you saw it in August, didn’t you?
“A. No.
“I described the progression from May 25th to the August 16th CT, because you can’t evaluate it on this May 11th study.
[[Image here]]
“Q. You didn’t see narrowing of the carotid artery on May 11th, did you?
“A. On the subsequent contrast enhanced study, I did not.”
Again, Dr. Mottershaw cites general authority regarding the waiver of objections to jury instructions; that authority does not establish that Ledbetter waived her argument in support of a motion for a new trial, which relied on the order granting the motion in limine, based on the facts of this case.
In a similar argument, Dr. Mottershaw argues that Ledbetter could have asked for a curative instruction “when the May 25 records/images were mentioned.” Dr. Mottershaw’s brief at 32. It appears that Dr. Mottershaw refers to Dr. Bennett’s reference at trial to “May 25th,” quoted above. Even if the jury had been instructed to disregard Dr. Bennett’s testimony about May 25 that would not have changed the fact that there were inadvertently un-redacted references to the May 25 CT scan in Defendant’s Exhibit 7. Further, Dr. Mottershaw cites no authority indicating that failure to seek a curative instruction regarding Dr. Bennett’s testimony would somehow preclude the trial court from ordering a new trial based on the jury’s exposure to the inadvertently unredacted material in Defendant’s Exhibit 7.
Dr. Mottershaw also argues that failure to redact the references to the May 25 CT scan in Defendant’s Exhibit 7 was harmless error because, she says, that evidence had already been admitted without objection. See Rule 45, Ala. R.App. P. (“No judgment may be reversed ... unless ... it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”). In support of her argument, Dr. Motter-shaw cites Dr. Bennett’s testimony, quoted above. She also cites “mention of May 25 by [Dr. Mottershaw’s] counsel,” which apparently refers to this question that was posed by Dr. Mottershaw’s attorney to Dr. Jones: “And you got a study that was done two weeks later. May 25, right?”
*56 After this question was posed to Dr. Jones, Ledbetter’s attorney asked to approach the bench, and a discussion was held outside the presence of the jury concerning the order granting the motion in limine. The mere reference to the May 25 CT scan by Dr. Jones is not the equivalent of medical records referencing the May 25 CT scan. Further, Dr. Bennett’s cryptic reference to “May 25th” is not the equivalent of medical records referencing the CT scan performed on that date.
Dr. Mottershaw also argues that, if there was error in this case, it was caused by Ledbetter, i.e., it was invited error. “‘[A] party may not induce an error by the trial court and then attempt to win a reversal based on that error. “A party may not predicate an argument for reversal on ‘invited error,’ that is, ‘error into which he has led or lulled the trial court.””” White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1057 (Ala.2008) (quoting Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 808 (Ala.2003), quoting other cases). The thrust of Dr. Mottershaw’s argument is that Ledbetter should have discovered that Defendant’s Exhibit 7 had not been redacted before it went to the jury. This is not invited error because Ledbetter did not lull the trial court into making an error. Rather, both Ledbetter and Dr. Mottershaw simply failed to notice that Dr. Mottershaw’s exhibit had not been redacted as ordered. In addition to general law regarding invited error, Dr. Mottershaw cites McCormick v. Badham, 204 Ala. 2, 85 So. 401 (1919). Without going into unnecessary detail, we note that the holding of that case simply does not appear to be grounded on invited error; rather, there was no error in the first place.
Dr. Mottershaw also argues that the trial court erred by striking her attorney’s affidavit, which Dr. Mottershaw submitted in opposition to Ledbetter’s motion for a new trial. Rule 59, Ala. R. Civ. P, provides, in part:
“(c) Time for Serving Affidavits. When a motion for new trial is based upon affidavits, they shall be served with the motion. The opposing party has fifteen (15) days after such service within which to serve opposing affidavits, which period may be extended for an additional period not exceeding twenty (20) days either by the court for good cause shown or by the parties by written stipulation....”
On November 30, 2011, Ledbetter filed a motion for a new trial, which she supported with a brief and affidavits. On January 23, 2012, Dr. Mottershaw filed a response to the motion for a new trial. On January 25, 2012, the trial court held a hearing on the motion for a new trial. More than two weeks after the hearing, on February 9, 2012, Dr. Mottershaw filed the affidavit of one of her attorneys, Matt Griffith, in opposition to the motion for a new trial. Ledbetter moved to strike the affidavit, and the trial court granted the motion to strike on February 13, 2012. That same day, the trial court granted a new trial.
In this case, Dr. Mottershaw filed her attorney’s affidavit on February 9, 2012, 71 days after Ledbetter filed her motion for a new trial on November 30, 2011. Thus, Dr. Mottershaw’s affidavit was filed well after the period for doing so established by Rule 59(c). In Elliott v. Elliott, 372 So.2d 846, 850 (Ala.1979), this Court stated that the time requirements in Rule 59(c) may be relaxed in the trial court’s discretion. Dr. Mottershaw argues that the trial court exceeded its discretion by striking the affidavit because, she says, (1) she was given no opportunity to argue against the motion to strike and (2) the affidavit was a reasonable and timely re *57 sponse in light of the arguments made at the hearing two weeks earlier. Dr. Mot-tershaw then contends, without further elaboration, that the affidavit “gives clarity to the context of the unredacted exhibit issue, the responsibility for it, and bears explicit pertinence to the erroneous assumptions made by the trial court in ... granting] ... a new trial.” Dr. Motter-shaw’s brief at 66. Dr. Mottershaw does not explain how the affidavit would have changed the result. Dr. Mottershaw argues that the trial court’s discretion should be exercised liberally to receive affidavits, but the cases cited by her for that proposition do not exactly say that. Quite simply, the trial court may allow or disallow untimely affidavits at its discretion, Elliott, and there is no indication that the trial court exceeded its discretion by striking the untimely affidavit in this case.
Dr. Mottershaw also argues that the trial court exceeded its discretion in denying her Rule 54(d), Ala. R. Civ. P., petition to tax costs. After the jury returned a verdict in her favor, Dr. Motter-shaw petitioned the trial court to tax costs, and the trial court denied the motion. Rule 54(d) provides, in part, that “costs shall be allowed as of course to the prevailing party unless the court otherwise directs .... ” (Emphasis added.) Further, “[t]he taxation of costs under Rule 54(d) rests in the discretion of the trial court, and its decision will not be reversed in the absence of a clear abuse of discretion.” Miller v. Thompson, 844 So.2d 1229, 1233 (Ala.Civ.App.2002). The trial court did not exceed its discretion in denying Dr. Mot-tershaw costs, especially considering that the trial court has now granted Ledbetter a new trial and that we are affirming that decision. That is, Dr. Mottershaw is no longer the prevailing party. See White Sands Group, L.L.C. v. PRS II, LLC, 32 So.3d 5, 21 (Ala.2009) (“Because we are reversing the summary judgment for PRS II, Sterling, and Asfour, we must vacate the PRS II costs order and the Sterling/Asfour costs order.”); and White v. American Airlines, Inc., 915 F.2d 1414, 1425 (10th Cir.1990) (“[I]n light of our conclusion that a new trial is required, we vacate the district court’s award of costs because plaintiff is not a ‘prevailing party’ within the meaning of Fed.R.Civ.P. 54(d) and therefore is not entitled to costs.”).
In her brief, Ledbetter argues, in the alternative, that the trial court could have granted a new trial on two grounds asserted by Ledbetter before the trial court but specifically pretermitted by the trial court in its order granting a new trial. Dr. Mottershaw, in her reply brief, addresses those alternative grounds. In support of her arguments regarding those alternative grounds, Dr. Mottershaw attached to her reply brief three exhibits — the deposition testimony and related exhibits of certain doctors — that are not in the record but were made as an offer of proof. Dr. Mot-tershaw also filed a motion under Rule 10(f), Ala. R.App. P., to supplement the record with those three exhibits.[3] In response, Ledbetter filed a motion to strike those three exhibits attached to the reply brief. Of course, those three exhibits are irrelevant in light of our resolution of this appeal. Because the question whether to include the exhibits in the record concerns issues we have not considered in resolving this appeal, whether to supplement the record is basically a moot issue. Thus, we deny both the motion to supplement and the motion to strike.
1110959 — MOTIONS DENIED; AFFIRMED.
1110962 — AFFIRMED.
*58 MOORE, C.J., and STUART, BOLIN, PARKER, MURDOCK, SHAW, MAIN, and WISE, JJ., concur.

. Dr. Mottershaw asks: “If this were an ‘extraneous material’ case, where are the affidavits to prove it?” Dr. Mottershaw's brief at 57. Rule 606(b), Ala. R. Evid., generally prohibits juror testimony impeaching a verdict, but jurors may testify as to "whether extraneous prejudicial information was improperly brought to the jury's attention.” The mere absence of jury affidavits in this case does not establish that there was not "extraneous prejudicial information” in this case.

. The cases addressing the jury’s consideration of extraneous materials often use the term "juror misconduct” in describing how the materials came before the jury. In this case, there was no "juror misconduct,” but, just as in juror-misconduct cases, the jury had before it material that should have been excluded, and that is the salient point. Thus, the same standard for determining prejudice would apply in juror-misconduct cases as well *53 as in cases not actually concerning juror misconduct, like this case. See, e.g., Gold Kist, Inc. v. Tedder, 580 So.2d 1321 (Ala.1991), discussed infra.

. Dr. Mottershaw also filed in the trial court a motion to supplement the record, and the trial court denied that motion.