Rel: June 28, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

-------------------------

### CR-2023-0245

-------------------------

### D.M.G.

#### v.

### State of Alabama

### Appeal from Montgomery Circuit Court
### (CC-19-405)

KELLUM, Judge.

The appellant, D.M.G., was convicted of sodomizing his 12-year-old stepdaughter, A.P., see § 13A-6-63(a)(1), Ala. Code 1975.[1] He was sentenced to 180 months in prison.

-------------------------

[1]D.M.G. was indicted for two counts of sodomy in the first degree of his two stepdaughters, A.P. and J.P. Before trial, the State moved that

The State's evidence tended to show the following. A.P. testified that in the summer of 2018 she was living with her mother, stepfather, sister, and brother. (R. 128.) She testified that she told her father what D.M.G. had done to her:

> "[A.P.]: I told him that it was one night, it was a school night, and it was like two or three o'clock in the morning when [D.M.G.] woke me up out of my sleep. [D.M.G.] told me to come in the dining room, which is right by my room, because I shared a room with my sister.
>
> "So he woke me up and told me let me go check your teeth, and I was like why. So he told me like come on, get up, so I can check your teeth. So I said okay. I went into the dining room, sat in the chair. That's when he brought out a black beanie and put it over my eyes, and that's when he was like, oh, let me check your teeth, because you were complaining about a toothache.
>
> "So that's when -- that's what I did. I opened my mouth, and then that's when he so-called checked my teeth. But it didn't feel that way.
>
> "[Prosecutor]: What do you mean by it didn't feel that way?
>
> "[A.P.]: Like a finger don't -- a finger doesn't feel that way.

---

the count of the indictment involving J.P. be nolle prossed. (R. 98.) D.M.G. moved that this count be dismissed with prejudice. The circuit court dismissed this count of the indictment but did not indicate that the dismissal was with prejudice. (C. 119.)

To protect the anonymity of the child victim we are using her initials. See Rule 52, Ala. R. App. P.

2

"[Prosecutor]: Okay. Now, after he checked your teeth, what happened after that?

"[A.P.]: After that, I went back in my -- I went to the bathroom because I felt some stuff in my mouth, and I spit it out in the sink, in the bathroom sink."

(R. 132-34.) A.P. testified that another incident occurred when D.M.G. came to her bedroom. She testified:

"So [D.M.G.] came at two or three o'clock in the morning, and that's when he started touching all over my private areas. And then that's when I turned over. He didn't know I was awake, but I was awake. I was scared to get up because I thought he was going to hurt me or harm me.

"So that's when I turned over, and that's when he stuck his male part in my mouth."

(R. 134.)[2]

The State also introduced a report completed by Vikki Vodosia, a sexual-assault nurse examiner ("SANE") who examined A.P. and the Child Protection Services ("Child Protect") documents that were completed after a forensic examination was conducted on A.P. by Child Protect. (R. 157.)

---

[2]At the conclusion of the State's case, defense counsel moved that the State elect which incident it intended to rely on to support the charges in the indictment. (R. 273.) The State indicated that it was relying on the incident that occurred in the dining room. (R. 274.)

At the conclusion of the evidence, the jury convicted D.M.G. of sodomy in the first degree. This appeal followed. Because we find it necessary to reverse D.M.G.'s conviction, we address only the issue that warrants reversal.

Motion for a New Trial

D.M.G. argues that the circuit court erred in denying his motion for a new trial because, he says, the jury considered extraneous information during deliberations. Specifically, D.M.G. argues that the extraneous information, information that had not been admitted at trial, was contained in a document from Child Protect that was admitted as State's exhibit no. 2. The redacted information indicated that two victims had been involved in the charges against D.M.G.

The record shows that State's exhibit no. 2 was admitted during the direct examination of Janah Bailey, the former Executive Director of Child Protect. (R. 197.) D.M.G. objected to the admission of the exhibit and stated that redactions should be made because the document referred six times to two victims. After a lengthy discussion, the State agreed to redact those portions of the document that referred to a second victim. (R. 220.) The circuit court agreed that the document could be

admitted after the redactions were made. The unredacted document read, in pertinent part:

> "Brief description of allegation: <u>Both of the girls have</u> disclosed molestation by [D.M.G.] for the last two years. Blindfolding <u>them</u>, taking them to the back of the house, putting things in the<u>ir</u> mouth<u>s</u>, made them put brown gritty substance in mouth, girl<u>s </u>spit it out. [A.P.'s father] says that [D.M.G.] didn't try to penetrate <u>them</u>. Also said that [D.M.G.] had not been using protection and bringing back disease to Mom."

(Supp. R. 17.) The redactions are underlined in the above quote. Based on discussions in the record it appears that the State made the redactions with white-out correction fluid.

At the sentencing hearing, defense counsel informed the circuit court that he intended to file a postjudgment motion and an affidavit by one of the jurors. The State objected and argued that juror affidavits were not admissible under Rule 606(b), Ala. R. Evid. Defense counsel indicated that a juror had brought to the court's attention that the jurors were aware that there were two victims involved in the case after they examined State's exhibit no. 2 in the jury room.

In D.M.G.'s motion for a new trial, he argued:

> "During jury deliberations, the trial judge and undersigned defense counsel were sitting in the courtroom and heard the usual sounds from the jury room that suggested

5

the jury had reached a verdict, when a female juror could plainly be heard saying 'once you see it you can't unsee it.' After the jury returned its verdict and the jury was released, apparently a juror notified either the trial judge or someone with the Court's staff that the jury had discerned from the exhibit that [D.M.G.] had allegedly molested both of the siblings. A member of the jury, when speaking with defense counsel in the hallway after the trial, also disclosed that she changed her vote from not guilty to guilty after they ascertained from the exhibit that [D.M.G.] was alleged to have molested both of the siblings. Thus, [D.M.G.'s] conviction is based on extraneous prejudicial information that was improperly introduced into the deliberative process via the exhibit."

(C. 202.)

Four hearings were held on D.M.G.'s motion for a new trial. At the first hearing, the circuit court expressed strong reservations about not granting the motion.

"THE COURT: Okay. Now, the juror approached me, and she said that, you know, Judge, there were two girls. And I asked her. I said, well, how do you know there were two girls. She said the document.

"So do you need to bring her in and ask her about all of this other stuff? Because the juror said that but for the document, she wouldn't have known. "

(R. 363.)

"THE COURT: I gave him 15 years. And now we're having jurors that said they had reasonable doubt and but for this document that said that he had molested two people, which

6

they shouldn't have known about, I would have thought that they didn't prove your case.

"[Prosecutor]: Okay.

"THE COURT: So where is justice? I mean, isn't it easier for us just to try him again than to let him go convicted because of a document that folks did? It's not his fault.

"....

"THE COURT: But we're going to put him in jail for 15 years when jurors are coming and telling us that they wouldn't have convicted him if they hadn't considered that. And that should not have been considered because it was prejudicial.

"....

"THE COURT: Do you know what the odds of a Judge seeing a former juror and then the juror approaching the Judge and saying, Judge, it was two victims?

"[Defense counsel]: And, Judge, I agree with you, and I think Your Honor has enough before you today.

"....

"THE COURT: It doesn't matter what the others are saying if one of the twelve said that they would not have voted.

"[Prosecutor]: Then they should have voted not guilty, Judge.

"THE COURT: But they said that the document changed their mind."

7

(R. 375-78.)   Based on the above discussion, the motion for a new trial was continued pursuant to Rule 24.4, Ala. R. Crim. P., to a date certain upon agreement of all the parties.

At the second hearing, defense counsel submitted an affidavit that had been executed by the jury foreperson.  This affidavit read:

> "I served as a juror in the case of State of Alabama v. [D.M.G.]. After the evidence was presented, the jury elected me to act as the foreperson of the jury.  During deliberations I had reasonable doubts as to whether the prosecution had proven its case beyond a reasonable doubt.  As deliberations continued, we focused more on State's Exhibit 2, which was paperwork from Child Protect.  As we looked closer at the portion of that document where it contained a 'Brief Description of Allegation' the handwritten portion contained several redactions that appeared to have been made with liquid paper to obscure certain words or letters.  As we looked closer we were able to see that the redacted parts stated that the defendant had sexually molested both of the siblings, and not just the one sibling who testified at trial."

(Supp. R. 19.)

At the third hearing, the circuit court again stated on the record that one juror had approached him and informed him that the jury was aware that two victims had been involved in the charges against D.M.G.

> "THE COURT:  Now, the juror -- the first juror, she didn't contact me.  She saw me.  And then she started talking about the case, and she said that, you know, it was two.  And it went on like that, and then I called y'all and said what happened.

8

"....

"THE COURT: Well, now, the one that talked to me said it changed her mind. She said that it changed her mind. She was going to vote not guilty. Okay? But she didn't say that under oath. She needs to get on that stand and say that."

(R. 395-96.)

At the fourth hearing, defense counsel stated that he could not locate the jurors. At the conclusion of the hearing, the circuit court stated: "I'm not going to overturn a jury verdict if the juror doesn't come to testify." (R. 406.) The circuit court indicated that it would not grant the motion without the jurors being cross-examined and denied the motion for a new trial.

On appeal, D.M.G. argues that the circuit court erred in denying his motion for a new trial. Specifically, D.M.G. argues that the redacted exhibit was admitted over D.M.G.'s objection, that Rule 606, Ala. R. Evid., did not preclude a juror from executing an affidavit in this case, and that he is entitled to a new trial because the jury considered extraneous information during its deliberations. In the alternative, D.M.G. argues that at a minimum he is entitled to a full hearing where he can subpoena the jurors to establish that he was prejudiced.

9

The State concedes that the circuit court erred in admitting the Child Protect report and that "the trial court erred in admitting state exhibit two as a business record exception to the hearsay rule." (D.M.G.'s brief at p. 19.)

Furthermore, the affidavit executed by the jury foreperson was admissible to show that extraneous information had been considered by the jury.

> "The general rule in Alabama is that affidavits of jurors will not be accepted for the purpose of impeaching their own verdict. Weekley v. Horn, 263 Ala. 364, 365, 82 So. 2d 341, 342 (1955). This general rule is subject to an exception which arises when the affidavits tend to show extraneous facts which have influenced the verdict. 263 Ala. at 366, 82 So. 2d at 342 (holding that remarks between jurors during their deliberations, even though improper, are not extraneous facts)."

Whitten v. Allstate Ins., Co., 447 So. 2d 655, 657 (Ala. 1984). See also Ex parte Arthur, 835 So. 2d 981 (Ala. 2002).

In 1996, the Alabama Supreme Court adopted Rule 606(b), Ala. R. Evid., to specifically address this issue. This Rule provides:

> "Upon an inquiry into the validity of a verdict or indictment, a juror may not testify in impeachment of the verdict or indictment as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict

10

> or indictment or concerning the juror's mental processes in connection therewith, <u>except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror</u>. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes. Nothing herein precludes a juror from testifying in support of a verdict or indictment."

(Emphasis added.)

In <u>Hallmark v. Allison</u>, 451 So. 2d 270 (Ala. 1984), a majority of the Alabama Supreme Court held that a motion for a new trial may be granted solely on the basis of a juror affidavit when that affidavit stated that extraneous information had been considered by the jury.

Here, the evidence in support of the motion for a new trial was an affidavit executed by the juror foreperson. Also, the facts contained in the affidavit were supported by the trial court's repeated remarks that a juror had approached him and informed him that the jury had been aware of a second victim and that that information impacted their verdict. We cannot ignore the trial judge's personal knowledge of the facts that supported the motion for a new trial.[3] "In acting upon the

---

[3]"'Supporting affidavits or other extrinsic evidence is not necessary or proper where the grounds relied on in the motion for a new trial are

11

defendant's motion for a new trial, the trial judge used and relied in part upon knowledge of what took place at the trial before him." Commonwealth v. Bernier, 359 Mass. 13, 16, 267 N.E.2d 636, 638 (1971).

It is undisputed that D.M.G.'s jury had possession of extraneous information in the jury room. Although the State attempted to redact information about the second victim, the record indicates that the information was still visible to jurors. The State concedes that the redacted information in the exhibit was extraneous information.[4] "'Extraneous information' is defined as information which is neither of record nor the general knowledge that jurors are expected to possess." State v. Yang, 196 Wis. 2d 359, 366, 538 N.W.2d 817, 820 (1995). "Information is extraneous if it is 'information introduced to the jury from outside the normal deliberative process.'" State v. Lipcombe, 304 A. 3d

shown by the record of the proceedings.' 66 C.J.S. New Trial § 161 (1950)." Hill v. State, 675 So. 2d 484, 487 (Ala. Crim. App. 1995).

[4]The State relies on the case of Mottershaw v. Ledbetter ex rel. Est. of Womack, 148 So. 3d 45 (Ala. 2013), and acknowledges that the information on State's exhibit no. 2 was extraneous information. In Mottershaw, a portion of an exhibit was supposed to be redacted before it was admitted but the redactions were never made. The Supreme Court held that the unredacted exhibit contained extraneous information. 148 So. 3d at 50-51.

12

275, 287 (Me. 2023). "[E]xtraneous information is information dealing with the [parties] or the case which is being tried, which information reaches a juror without being introduced in evidence." State v. Rosier, 322 N.C. 826, 832, 370 S.E.2d 359, 363 (1988). When a jury considers extraneous information

> "the defendant has been deprived of the opportunity to be present when evidence is being presented, to be represented by counsel at an evidentiary proceeding during trial, to cross-examine the 'witnesses' who presented the evidence, to offer evidence in rebuttal, to request curative instructions, or to take other tactical steps, including argument to the jury, to place the evidence in perspective for the jury."

State v. Poh, 116 Wis. 2d 510, 525, 343 N.W.2d 108, 117 (1984).

> "The integrity of the factfinding process is the heart and soul of our judicial system. Judicial control of the jury's knowledge of the case is fundamental. Our rules of evidence are designed, so far as humanly possible, to produce the truth and to exclude from the jury those facts and objects which tend to prejudice and confuse. Evidence presented must be subject to cross-examination and rebuttal. The defendant's constitutional rights of confrontation, of cross-examination, and of counsel are at stake."

Ex parte Lasley, 505 So. 2d 1263, 1264 (Ala. 1987).

In Lasley, the Alabama Supreme Court first considered whether a juror's conducting a home experiment resulted in reversible error that warranted a new trial. The Court stated:

13

"There is no doubt that the home experiments constituted juror misconduct. The only question is whether the misconduct requires a new trial. The standard for determining whether juror misconduct requires a new trial is set forth in Roan v. State, 225 Ala. 428, 435, 143 So. 454, 460 (1932).

"'The test of vitiating influence is not that it did influence a member of the jury to act without the evidence, but that it might have unlawfully influenced that juror and others with whom he deliberated, and might have unlawfully influenced its verdict rendered." (Emphasis added.)

"The Roan test mandates reversal when juror misconduct might have influenced the verdict. This test casts a 'light burden' on the defendant. Ex parte Troha, 462 So. 2d 953 (Ala. 1984).

"Application of the rule cannot in all cases depend entirely upon the jurors' statements that the extraneous information did not affect their verdict.

"....

"Considering three separate home experiments and the consultation of law books by one juror, we conclude that the jury might have been influenced, notwithstanding the jurors' statements to the contrary. The jurors cannot in every case determine the question of whether they were, or might have been, improperly influenced."

Lasley, 505 So. 2d at 1264. As the Court further noted:

Ten years later, the Alabama Supreme Court further refined its

holding in Lasley:

14

"Ex parte Lasley[, 505 So. 2d 1263 (Ala. 1987),] does stand for the proposition that some kinds of juror misconduct in criminal cases may allow a court to presume prejudice as a matter of law, notwithstanding the fact that jurors deny that any actual prejudice resulted from exposure to extraneous matters. However, presumption of prejudice as a matter of law has generally been restricted to cases in which the jury's consideration of the extraneous facts was 'crucial in resolving a key material issue in the case.' See Hallmark v. Allison, 451 So. 2d 270, 271 (Ala. 1984); Ex parte Thomas, 666 So. 2d 855 (Ala. 1995); see also Pearson v. Fomby, 688 So. 2d 239 (Ala. 1997)."

Dawson v. State, 710 So. 2d 472, 475-76 (Ala. 1997).

"[U]nder Alabama law, juror misconduct involving the introduction of extraneous materials warrants a new trial when one of two requirements is met: 1) the jury verdict is shown to have been actually prejudiced by the extraneous material; or 2) the extraneous material is of such a nature as to constitute prejudice as a matter of law. Knight v. State, 710 So. 2d 511, 517 (Ala. Crim. App. 1997)."

Ex parte Apicella, 809 So. 2d 865, 870 (Ala. 2001). See also Ex parte Arthur, supra.

"[P]resumed prejudice is restricted to cases where the extraneous information considered by the jury was '"crucial in resolving a key material issue in the case."'" Resurrection of Life, Inc. v. Dailey, 311 So. 3d 748, 757 (Ala. 2020). "[I]n some cases, 'the character and nature of the extraneous material [constitute] prejudice as a matter of law and no showing that the jury was in fact influenced thereby in arriving at their

verdict is necessary.' [Whitten v. Allstate Ins. Co., 447 So. 2d 655, 658 (Ala. 1984)]." Minshew v. State, 594 So. 2d 703, 716 (Ala. Crim. App. 1991). "This court has applied the presumption of prejudice only when the extraneous information is of a considerably serious nature." United States v. Lloyd, 269 F. 3d 228, 238 (3d Cir. 2001). See also State v. Harrison, 264 Neb. 727, 737, 651 N.W.2d 571, 580 (2002) ("Extraneous material or information considered by a jury may be deemed prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that the extraneous material or information affected the verdict to the detriment of a litigant.").

Alabama courts have found that extraneous information resulted in prejudice as a matter of law in the following cases: Taite v. State, 48 So. 3d 1 (Ala. Crim. App. 2009) (one juror told fellow jurors that the defendant had a prior conviction); Ex parte Arthur, 835 So. 2d 981, 985-86 (Ala. 2002) ("[T]he extraneous information brought in by the juror and pertaining to what may well have been the principal issue in the case -- whether the car accident caused Ashley's migraine headaches -- was prejudicial as a matter of law."); Ex parte Thomas, 666 So. 2d 855, 858

16

(Ala. 1995) (juror conducted experiment using handcuffs to verify the validity of the statements of the defendant resulted in prejudice as matter of law).  In other cases, Alabama appellate courts have declined to find prejudice as a matter of law: Jackson v. State, 133 So. 3d 420, 440 (Ala. Crim. App. 2009) (juror visited crime scene); Ross v. State, 41 So. 3d 106, 111 (Ala. Crim. App. 2009) (extraneous information involving a prior conviction of a codefendant); Ex parte Apicella, 809 So. 2d 865, 872 (Ala. 2001)(juror consulted attorney concerning the definition of "complicity"); Minshew v. State, 594 So. 2d 703, 715 (Ala. Crim. App. 1991) (juror consulted dictionary concerning legal definitions and shared those definitions with the other jurors).

In Taite, supra, this Court held that the extraneous information shared by one juror with his fellow jurors constituted prejudice as a matter of law because the information was that the defendant had a prior conviction.  We stated:

> "There was no dispute that the juror who knew of Taite's previous conviction conveyed this extraneous information to the other jurors during their deliberations. The juror's statement about Taite's imprisonment was not based on evidence submitted at trial.  'It is fundamental to a fair trial that jurors should consider only the evidence presented at trial.'  Reynolds v. City of Birmingham, 723 So. 2d 822, 824 (Ala. Crim. App. 1998). See also Ex parte Troha, 462 So. 2d

17

953, 954 (Ala. 1984) ('It is a well settled principle of law, and, further, it is fundamental to a fair trial, that jurors should consider only the evidence presented at trial.'). Information about a defendant's prior conviction is unquestionably prejudicial, particularly when that information is unverified, is not revealed as properly admitted evidence subject to cross-examination during the trial process, and is unaccompanied by any jury instruction with regard to its limited use.

> "'[The Alabama Supreme] Court has acknowledged the inherently prejudicial nature of evidence of a defendant's prior convictions. Cofer v. State, 440 So. 2d 1121, 1124 (Ala. 1983) ("[e]vidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant"). "The general exclusionary rule bars the state from introducing evidence of an accused's prior criminal acts for the sole purpose of proving the propensity of the accused to commit the charged offense." Hobbs v. State, 669 So. 2d 1030, 1032 (Ala. Crim. App. 1995). Thus, evidence of prior convictions is admissible only for limited purposes. "The basis for the rule lies in the belief that the prejudicial effect of prior crimes will far outweigh any probative value that might be gained from them. Most agree that such evidence of prior crimes has almost an irreversible impact upon the minds of the jurors." Cofer, 440 So.2d at 1123 (quoting Charles W. Gamble, McElroy's Alabama Evidence § 69.01 (3d ed. 1977)). The general exclusionary rule "protects the defendant's right to a fair trial" by seeking "'to prevent conviction based on a jury belief that [the] accused is a person of bad character. The jury's determination of guilt or innocence should be based on evidence relevant to the crime charged.'" Cofer, 440 So. 2d at 1123 (citation omitted). Thus, it naturally follows that the trial court should take all necessary

18

> precautions to ensure that when evidence of a defendant's prior convictions is admitted into evidence, the jury is properly instructed on the purpose for which it may consider that evidence. This includes instructing the jury, sua sponte, that it may not consider the evidence of prior convictions as substantive evidence that the defendant committed the charged offense.'

"Ex parte Minor, 780 So. 2d 796, 802 (Ala. 2000)."

"The affidavits submitted by Jurors M.B. and N.F. along with Taite's motion for a new trial indicated that the jury's preliminary vote was not unanimous. Therefore, information about Taite's alleged prior conviction would have suggested that Taite had a propensity to commit illegal acts, which was '"crucial in resolving a key material issue in the case."' Dawson v. State, 710 So. 2d 472, 475 (Ala. 1997) (citing Hallmark v. Allison, 451 So. 2d 270, 271 (Ala. 1984), and Ex parte Thomas, 666 So. 2d 855 (Ala. 1995)). The juror's statement about Taite's alleged prior conviction made it more likely that the jury found Taite guilty based on the jury's belief that she was of bad character and that the prior conviction tended to show her guilt in the case under consideration by the jury. The jury's exposure to and consideration of this inherently prejudicial and unproven statement is in the limited category of information that results in prejudice as a matter of law. The trial court should have granted the motion for a new trial after it found that extrinsic evidence had been introduced into the deliberation process and that presumed prejudice resulted from the extrinsic evidence. See Hallmark v. Allison, 451 So. 2d at 271-72 ('Although we are unable to determine whether the introduction of the extraneous facts did change the decision of the jurors, consideration of the extraneous facts was crucial in resolving a key material issue in the case, and we conclude that the trial court could not reasonably have found that the

introduction of the extraneous facts into the jury's deliberations was not prejudicial.')."

Taite v. State, 48 So. 3d 1, 10-11 (Ala. Crim. App. 2009).

In Ross v. State, 41 So. 3d 106 (Ala. Crim. App. 2009), this Court considered whether the holding in Taite should extend to a juror telling the other jurors that a codefendant had a previous conviction. In declining to extend the Taite holding to a codefendant, we noted that Taite was consistent with federal law.

> "Our holding in Taite is consistent with federal caselaw. The United States Court of Appeals for the Eighth Circuit in United States v. Rodriquez, 116 F.3d 1225, 1227 (8th Cir. 1997), stated:
>
>> "'This Court has considered what types of influences will be considered extrinsic or extraneous to deliberations, so that a juror may testify about them. Extrinsic or extraneous influences include "publicity received and discussed in the jury room, matters considered by the jury but not admitted into evidence, and communications or other contact between jurors and outside persons." United States v. Bassler, 651 F.2d 600, 602 (8th Cir. 1981), cert. denied, 454 U.S. 1151, 102 S.Ct. 1018, 71 L.Ed.2d 305 (1982). A prior conviction of a defendant, for example, when not admitted as evidence at trial, but which nonetheless entered into the jury's deliberations through personal knowledge of a juror, has been held to be "extraneous prejudicial information." United States v. Swinton, 75 F.3d 374, 381 (8th Cir. 1996).'"

20

Ross, 41 So. 3d at 110.

The State argues that the prejudice-as-a-matter-of-law standard does not apply in this case because, it says, the extraneous information was not crucial. In brief, the State asserts: "The key material issue in this case was whether D.M.G. sodomized A.P. The fact that another child made similar allegations was immaterial to the jury's determination of that issue." (State's brief at p. 27.) "Generally, a presumption of prejudice [as a matter of law] applies only in a case in which the jury's consideration of the extraneous material was '"crucial in resolving a key material issue in the case."'" Ex parte Apicella, 809 So. 2d 865, 872 (Ala. 2001). We cannot agree with the State's description of the extraneous information. Evidence that there was a second victim was crucial information.[5] It implied to the jury that D.M.G. was of bad character. Taite, 48 So. 3d at 10-11. Also, information that D.M.G. had been charged with the same act against a second victim "would have suggested

_____

[5]"Evidence of prior bad acts of a criminal defendant is presumptively prejudicial to the defendant. It interjects a collateral issue into the case which may divert the minds of the jury from the main issue." Ex parte Cofer, 440 So. 2d 1121, 1124 (Ala. 1983).

21

that [D.M.G.] had a propensity to commit illegal acts, which was " 'crucial in resolving a key material issue in the case.' "  Taite, 48 So. 3d at 11. "[The facts in this case] clearly fall[] within the category of one of those bells which the law recognizes cannot be unrung."  Nichols v. Seaboard Coastline Ry., 341 So. 2d 671 (Ala. 1976).

"A trial court's decision to deny a motion for a new trial will not be disturbed on appeal unless there is a clear showing of abuse of discretion, and this court will indulge every reasonable presumption in favor of the correctness of the trial court's ruling."  Mims v. State, 816 So. 2d 509, 515 (Ala. Crim. App. 2001).

For the foregoing reasons, we hold that this is one of those rare cases where prejudice is presumed as a matter of law based on the seriousness and prejudicial nature of the extraneous information.  The facts in this case are analogous to those presented to this Court in Taite. Because the presumed-prejudice standard applies, D.M.G. was not required to present evidence that actual prejudice existed or that the evidence affected the jury's verdict.  D.M.G. is entitled to a new trial. Accordingly, we hereby reverse D.M.G.'s conviction and remand this case

to the Montgomery Circuit Court for proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and McCool, Cole, and Minor, JJ., concur.